601 P.2d 311

Lilah M. FORBES, Plaintiff/Appellant,

v.

Edgar ROMO and Irene L. Romo, husband and wife; Sandy's Young Mens Fashions, Inc., dba Sandy's Wearhouse, an Arizona Corporation; and Eagle Paving, Inc., a corporation, Defendants/Appellees.

No. 2 CA–CIV 3216.

Court of Appeals of Arizona, Division 2.

July 12, 1979.

Rehearing Denied Sept. 12, 1979.

Review Denied Oct. 16, 1979.

Ettinger & Deckter, P. C. by Louis L. Deckter and Nathan A. Parkey, Tucson, for plaintiff-appellant.

Slutes, Browning, Zlaket & Sakrison, P. C. by D. Thompson Slutes, Tucson, for defendants-appellees Romo.

Donald Estes, Tucson, for defendant-appellee Sandy's Young Mens Fashions, Inc.

Chandler, Tullar, Udall & Redhair by D. B. Udall, Tucson, for defendant-appellee Eagle Paving, Inc.

## OPINION

HOWARD, Judge.

This is an appeal from a summary judgment in a slip and fall case. We shall set forth the facts viewed in the light most favorable to appellant. *Bendalin v. Valley National Bank of Arizona,* 24 Ariz.App. 575, 540 P.2d 194 (1975).

Appellees Romo own a small shopping center consisting of a long building divided into various shops and offices, located on East Broadway in Tucson, Arizona. There is a small parking lot in front of the buildings for customers which is separated from the buildings themselves by a concrete sidewalk. In June of 1975, appellant operated a dog grooming business in the shopping center. Her next-door neighbor was Sandy's Wearhouse. Under its lease with Romo, Sandy's, like appellant, was obligated to clean the sidewalk and parking lot in front of its store. None of the parties contends that the sidewalk and parking lot were also leased to the tenants. It appears that such areas were reserved for the common use of the tenants and their invitees with control in the Romos, whose right to control was not denigrated by the fact that the tenants were contractually required to keep them clean.

In June of 1975, the Romos hired Eagle Paving to repave the parking lot. Eagle Paving did what is known as a "chip and seal" job. Heavy oil was spread on the parking lot and ⅜ aggregate or pea gravel, commonly known as "chip", was then spread on the oil and rolled. After it was rolled, traffic was allowed on it immediately and then the loose gravel was swept up by Eagle Paving. In June or July the tenants of the shopping center, including Sandy's Wearhouse, complained to the Romos that people were tracking loose gravel on the sidewalk and into their stores and that it constituted a hazard to the safety of the customers. Mrs. Romo contacted Eagle Paving and complained about the job. Eagle Paving offered to take the oil and gravel off but Mrs. Romo refused to allow it to do so and never paid for the job. The condition continued up to April 24, 1976, the date that appellant fell. Prior to that time appellant had informed Mrs. Romo of the loose gravel on the sidewalk and in the stores and Mrs. Romo promised that something would be done. However, nothing in fact was done to correct the situation.

At the time of the accident appellant was carrying a small poodle out to a customer's car. The poodle was not misbehaving and there was no evidence that appellant was distracted in any way. Appellant slipped on the sidewalk in front of Sandy's. She looked at the sole of her shoe and found an indentation made by a pebble. She did not find the pebble. There was no evidence of any other gravel or pebbles on the sidewalk. On deposition, she testified:

"Q. As you were carrying the poodle, were you aware of any loose gravel anywhere in the vicinity?

A. No, at that time—

Q. I'm talking about the time prior to the time you fell.

A. Yes.

Q. You were not aware of any, prior to the time you fell?

A. Prior to the time I fell? I was always aware of loose gravel on the sidewalk.

Q. What brought this gravel to your attention, prior to your fall?

A. Everyone complained about tracking it into the shop, and I had to sweep it off two or three times a day.

Q. You were aware that there was gravel on the sidewalk?

A. Yes."

As always, resolution of the issues begins with a determination of the legal relationships among the parties. There is no question but that Romo was the landlord, Forbes and Sandy's were tenants and Eagle Paving was an independent contractor. The next question is what duties are created by these relationships.

■ The duty owed by a landlord to his tenants with regard to common use areas is analogous to that which is owed an invitee. *Primus v. Bellevue Apartments,* 241 Iowa 1055, 44 N.W.2d 347 (1950); *Conerly v. Liptzen,* 41 Mich.App. 238, 199 N.W.2d 833 (1972); 52 C.J.S. Landlord and Tenant § 417(6) at 53 (1968); 49 Am.Jur.2d Landlord and Tenant, Sec. 805 at 762 (1970); W. Prosser, Law of Torts, Sec. 63 at 405–406 (4th ed. 1971); Restatement (Second) of Torts, Sec. 360 (1965).[1] And see, Annot. 65 A.L.R.3d 14 (1975) for a general discussion of a landlord's liability for injuries due to defects in common areas.

■ An owner or occupier of land or buildings who invites or induces another to go thereon owes to such person the duty to have his premises in a reasonably safe condition and give warning of latent or concealed perils. An owner is liable for injuries to others occasioned by the unsafe condition of the land if the condition was known to him and not to them. The owner is not an insurer of such persons even when he has invited them to enter. Nor is there any presumption of negligence on the part of an owner or occupier merely upon a showing that an injury has been sustained. The true ground of liability is the proprietor's superior knowledge of the perilous instrumentality. It is when the careless instrumentality is known to the owner or occupier and not the person injured that a recovery is permitted. There is no liability for injuries from the dangers that are obvious or as well known to the person injured as to the owner or occupier. *Daugherty v. Montgomery Ward,* supra. The foregoing is subject to the exceptions which we set forth in *Silvas v. Speros Construction Co.,* 122 Ariz. 333, 594 P.2d 1029 (App.1979). Restatement (Second) of Torts, Sec. 343 A (1965) provides that a possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them unless the possessor should anticipate the harm despite such knowledge and obviousness. The comments to that section of the Restatement state that the possessor may have reason to expect harm to a visitor from known or obvious dangers, for example where the possessor has reason to expect that the invitee's attention may be distracted, so he will not discover what is obvious, or forget what he has discovered, or fail to protect himself against it. Since there is no such evidence here, the trial court was correct in awarding summary judgment in favor of the Romos.

■■ What legal relationship was there between Sandy's and Forbes relative to the common use area? Sandy's obligation to

---

1. Comment *b* to Sec. 360 states that knowledge of the dangerous condition on the part of the tenant or a third person may constitute contributory negligence. However, in Arizona, when dealing with premises liability such knowledge is not cast in terms of contributory negligence, but in terms of no liability. See *Daugherty v. Montgomery Ward,* 102 Ariz. 267, 428 P.2d 419 (1967).

keep the sidewalk clean was created by the contract between it and Romo. A duty to exercise due care may arise through an express or implied contract. *Duff v. Harrah South Shore Corp.,* 52 Cal.App.3d 803, 125 Cal.Rptr. 259 (1975); 57 Am.Jur.2d Negligence Sec. 47 (1971). Traditionally no cause of action in tort for negligence arises from breach of a duty created by virtue of a contract unless there exists between the defendant and the injured person privity of contract. *Baca v. Britt,* 73 N.M. 1, 385 P.2d 61 (1963); 57 Am.Jur.2d Negligence Sec. 48 (1971). There are situations, however, where privity is not required. See 57 Am. Jur.2d Negligence Sec. 49. Assuming arguendo that the contract between Sandy's and Romo created a duty on the part of Sandy's to act as a reasonable and prudent person under the circumstances in the cleaning of the sidewalk, the mere fact that an injury or accident occurred does not prove negligence. *Rhodes v. El Rancho Markets,* 9 Ariz.App. 576, 454 P.2d 1016 (1969). The very most Forbes has shown is that she slipped on a piece of gravel. Neither its size nor the length of time it was on the sidewalk has ever been shown. The record discloses only this lone, solitary piece of gravel on the sidewalk. We do not believe that reasonable minds would differ. Forbes has not shown that Sandy's was negligent.

As far as Eagle Paving is concerned, although the Romos did not pay for the work, the evidence shows that they would not permit Eagle Paving to take up the oil and gravel and never contacted it again about the job. On deposition, Mrs. Romo claimed there was nothing wrong with the repaving job after the gravel was swept up in July of 1975. These facts show that the Romos accepted the work even though they did not pay for it. Upon completion and acceptance of the work by the owner, a contractor is not liable for tortious conduct to third persons for injuries thereafter suffered. *Shannon v. Butler Homes, Inc.,* 102 Ariz. 312, 428 P.2d 990 (1967). See Annot. 58 A.L.R.2d 865 (1958). The record

shows that as a matter of law all the appellees were entitled to a summary judgment.

Affirmed.

RICHMOND, C. J., and HATHAWAY, J., concur.