715 P.2d 288

**John F. CAMPBELL, Jr. and Susan Campbell, his wife, Plaintiffs Counter-defendants-Appellees,**

v.

**Gordon K. WESTDAHL and Lola Sandra Westdahl, his wife; Raymond Klemp and Jane Doe Klemp, his wife; John Does I–X and Jane Does I–X, dba K & W Investment Company, a general partnership; Roe Partnership I–X; Black Corporations I–X, Defendants Counterclaimants-Appellants.**

No. 1 CA–CIV 7587.

Court of Appeals of Arizona, Division 1, Department D.

Oct. 31, 1985.

Reconsideration Denied March 12, 1986.

Killian, Legg, Nicholas & Fischer by Charles W. Wirken, Mesa, for plaintiffs counterdefendants-appellees.

Tanner & Associates by James L. Tanner, Phoenix, for defendants counterclaimants-appellants.

## OPINION

JACOBSON, Judge.

The basic issue raised by this appeal is whether the law will imply a condition of reasonableness upon a lessor's consent to an assignment where the lease is silent as to how the consent is to be exercised.

In 1976 the appellee John F. Campbell, Jr., entered into a written agreement with Altair Investment Company to lease property in the Westwood Plaza Shopping Center in Mesa, Arizona to be used as a plant nursery. The parties to the lease understood that the nursery would be located in a 5,000-square foot building and on 32,000 square feet of adjoining outdoor property for a monthly rental of $1,150.00. The written agreement, however, failed to reflect that the outdoor property was included in the lease and described the leased premises merely as the 5,000-square foot building. Campbell set up his nursery business on the premises and invested approximately $46,000 in improvements to the outdoor area. The term of the lease was five years with an option to renew for an additional five years at a rental amount keyed to the increase in the consumer price index. The lease contained restrictions on assignment and subletting which provided in relevant part:

> Lessee shall not assign this lease or sublet all or any part of the premises without the written consent of Lessor. In the event of any approved assignment or subletting (1) the Lessee shall not be discharged of his obligations under this lease but shall remain liable therefore [sic]. . . .

Campbell became disenchanted with the way his business was progressing and began efforts to sell it in June of 1977. He was unable to find a buyer during the succeeding three and a half years. Throughout this period, Campbell kept the business in operation but did so at a loss.

In June, 1980, Altair Investment Company sold its ownership in the shopping center to University Financial Investors, who simultaneously sold the property to the appellant, K & W Investment Company (hereinafter K & W). In purchasing the property, K & W knew that Campbell was using the outdoor area in his business. In studying Campbell's lease, K & W discovered that the written lease did not mention the outdoor property. K & W also realized that the monthly rent for the building alone was far below current market rates, and was extremely low if the outdoor area was included. K & W immediately met with Campbell to point out that the written lease contained no reference to the outdoor land on which the nursery was situated and to advise him that it had other plans for the use of the land. Campbell responded with letters from his attorney explaining Campbell's position that it had been intended by both original parties to the lease that the rent paid under the lease was for both the building and the outdoor area. K & W

took no further action to have Campbell move his business off the land.

In December, 1980, Campbell finally succeeded in finding buyers for his nursery business. William Sandercock and Robert F. Pielsticker entered into a written agreement with Campbell to purchase the nursery for $96,150.00. The purchasers and Campbell also executed an assignment of the lease which provided that the purchase contract was contingent upon receiving the lessor's written consent to the assignment. Campbell made two separate written requests to K & W for its consent to the assignment. Campbell provided K & W with financial data about the prospective assignees and made it clear that he would remain liable under the lease. At a meeting between the prospective assignees and K & W's attorney, the assignees learned that K & W would agree to the assignment of the lease only if the rental amount was renegotiated to reflect current market values and to include rent for the outdoor land. The same message was conveyed by K & W's attorney to the prospective assignees' attorney.

Sandercock and Pielsticker were unwilling to renegotiate the current rental and therefore declined to purchase the business. With no reasonable hope of finding another buyer before his option to renew the lease became effective and rather than continuing to lose money with the business, Campbell vacated the premises six months before the original term of the lease expired.

Campbell sued K & W, alleging it had breached the lease by unreasonably withholding consent to the assignment of the lease and intentionally interfering with Campbell's opportunity to sell his business. K & W counterclaimed for six months rent due after Campbell left the premises. The case was tried before a jury. After being instructed by the court that a lessor was not allowed to unreasonably withhold consent to assignment of a lease, the jury awarded Campbell $72,752.00 in damages, the amount of profit he would have received from the sale to Sandercock and

Pielsticker. The jury also awarded K & W $5,750.00 on its counterclaim.

K & W appeals from the judgment and denial of its motion for new trial, raising multiple issues. Campbell cross-appealed from the trial court's ruling on attorney's fees, but subsequently dismissed the cross-appeal.

## A. WAS IT PROPER TO IMPLY A REQUIREMENT OF "REASONABLENESS" IN WITHHOLDING CONSENT TO THE ASSIGNMENT?

The first issue raised is whether the trial court erred in ruling as a matter of law that the provisions of the lease prohibiting assignments without the written consent of the lessor implicitly required that consent not be unreasonably withheld. The trial court so ruled in granting a motion for partial summary judgment and accordingly instructed the jury that it would be a breach of the contract for K & W to withhold consent unreasonably to assignment of the lease. K & W argues that under Arizona law, where a lease prohibits assignment without the consent of the lessor and does not expressly state that consent may not be unreasonably withheld, the lessor may arbitrarily and without cause withhold consent to an assignment. K & W cites *M. Karam & Sons Mercantile Co. v. Serrano*, 51 Ariz. 397, 77 P.2d 447 (1938) to support this proposition. Campbell argues that although the Arizona courts have not yet addressed this issue, the modern trend is for courts to impose a requirement of reasonableness in such provisions.

We find that *Karam* does not address the issue before us. In *Karam*, the court acknowledged that a lessor is privileged to dictate the terms upon which he leases property and can provide that the lease will be forfeited if the lessee attempts to assign without the lessor's consent. The court also pointed out that restrictions against assignments are not favored by the law and are strictly construed against the lessor. *Karam* did not reach the question whether reasonableness in refusing to consent to assignment is required of the lessor

in the absence of express language to the contrary. We have found no Arizona case dealing with this precise question.

The Arizona courts generally follow the Restatement of the Law in the absence of Arizona authority on an issue. *Rodriquez v. Terry,* 79 Ariz. 348, 290 P.2d 248 (1955); *Burrell v. Southern Pac. Co.,* 13 Ariz.App. 107, 474 P.2d 466 (1970). Section 15.2 of the *Restatement (Second) of Property* (1977) takes the position that a landlord cannot unreasonably withhold consent to assignment unless the lease gives him an absolute right to do so. Section 15.2(2) provides:

> A restraint on alienation without the consent of the landlord of the tenant's interest in the leased property is valid, but the landlord's consent to an alienation by the tenant cannot be withheld unreasonably, unless a freely negotiated provision in the lease gives the landlord an absolute right to withhold consent.

The modern trend is to impose a standard of reasonableness on the landlord in withholding consent to a sublease unless the lease expressly states otherwise. This precise issue was considered by the Alabama Supreme Court in *Homa-Goff Interiors, Inc. v. Cowden,* 350 So.2d 1035 (Ala. 1977), which held:

> It should be noted at the outset that, in the absence of a restrictive clause as set out in ¶ 15(a), the lessee generally has the right, without consent of the lessor, to assign his interest under the lease, or to sublet the premises, because the law looks with disfavor on restraints on alienation. 49 Am.Jur.2d, *Landlord and Tenant,* §§ 398, 481. ¶ 15(a) of the lease states:
>
> > 'The Lessee shall not assign or sublease all or any part of the demised premises except by and with approval of the Lessor in writing. Should such approval be given, the assignment or sublease of said leased premises shall not release the Lessee of its obligation hereunder.'
>
> The general rule throughout the country has been that, when a lease contains an approval clause, the landlord may arbitrarily and capriciously reject proposed subtenants. See 49 Am.Jur.2d, *Landlord and Tenant,* § 432; 51C C.J.S. *Landlord and Tenant* § 36(1); 31 A.L. R.2d 821. This rule, however, has been under steady attack in several states in the past twenty years; and this for the reason that, in recent times, the necessity of reasonable alienation of commercial building space has become paramount in our ever-increasing urban society.
>
> \*    \*    \*    \*    \*    \*
>
> Guided by this rationale, we hold that, even where the lease provides an approval clause, a landlord may not unreasonably and capriciously withhold his consent to a sublease agreement. The landlord's rejection should be judged under a test applying a reasonable commercial standard. This question, of course, becomes a question of fact to be determined by the jury.

350 So.2d at 1037–38.

Similarly the Idaho Supreme Court in *Funk v. Funk,* 102 Idaho 521, 633 P.2d 586 (1981) noted the increase in the number of jurisdictions departing from the traditional rule and aligned itself with the modern trend:

> We deem the principal [sic] enunciated in the minority position to be based on more solid policy rationale than is the traditional orthodox majority's position. A landlord may and should be concerned about the personal qualities of a proposed subtenant. A landlord should be able to reject a proposed subtenant when such rejection reflects a concern for the legitimate interest of the landlord, such as assurances of rent receipt, proper care of the property and in many cases the use of the property by the subtenant in a manner reasonably consistent with the usage of the original lessee. Such concerns by the landlord should result in the upholding of a withholding of consent by a landlord. However, no desirable public policy is served by upholding a landlord's arbitrary refusal of consent merely because of whim or caprice or where, as

here, it is apparent that the refusal to consent was withheld for purely financial reasons and that the landlord wanted the lessees to enter into an entirely new lease agreement with substantial increased financial benefits to the landlord. If the lessor is allowed to arbitrarily refuse consent to a sublease for what is in effect no reason at all, such would virtually nullify the right of a lessee to sublet. The imposition of a reasonableness standard also gives greater credence to the doctrine that restraints on alienation of leased property are looked upon with disfavor and are strictly construed against the lessor.

*Id.* at 524, 633 P.2d at 589 (citations omitted).

The Supreme Court of New Mexico also elected to follow the modern trend and stated in *Boss Barbara Inc. v. Newbill*, 97 N.M. 239, 638 P.2d 1084 (1982):

The rationale for requiring a landlord to act reasonably when withholding consent to a subleasing agreement under a provision such as in this case at bar is that a lease, being a contract, should be governed by general contract principles of good faith and commercial reasonableness. Under this view, consent is not to be withheld unless the prospective tenant is unacceptable, using the same standards applied in the acceptance of the original tenant.

*Id.* at 240–41, 638 P.2d at 1085–1086 (citations omitted).

We find that these cases embrace the better reasoned rule which is consistent with another rule of law in Arizona, that in every agreement there is an implied covenant of good faith and fair dealing. *Beaugureau v. Beaugureau*, 11 Ariz.App. 234, 236, 463 P.2d 540, 542 (1970). We hold that the trial court properly imposed a standard of reasonableness on the landlord in withholding its consent to the assignment of the lease.

K & W also charges that the trial court improperly instructed the jury that a landlord has the burden of proving that he acted reasonably. We find no error in the jury instructions in this regard. The trial court instructed the jury that a lessor has a duty not to withhold unreasonably consent to assignment of a lease, that nonperformance of any contractual duty is a breach of contract, and that the plaintiff has the burden of proving breach of contract. If K & W believed further instructions were necessary, it should have made a request and cannot now complain that the instruction was incomplete. *Patania v. Silverstone*, 3 Ariz.App. 424, 415 P.2d 139 (1966).

### B. WAS THE WITHHOLDING OF CONSENT UNREASONABLE?

Next, K & W argues that its withholding of consent was not unreasonable and that the trial court improperly instructed the jury concerning the circumstances under which it would be reasonable to withhold consent. The trial court's instructions to the jury in·this regard were as follows:

Consent is not to be withheld unless the prospective lessee is unacceptable, using the same standards as in accepting the original lessee.

Refusal to consent without fair, solid and substantial cause or reason is unreasonable.

The testimony of reasonable grounds for refusing consent is objective, not subjective. It must be based on business considerations rather than on purely personal likes or dislikes.

The burden to furnish sufficient information for a lessor to determine whether a consent to an assignment to the lease will be given is on the lessee.

The lessor's under no duty to seek out such information.

In the absence of information concerning the proposed tenancy and the tenant, the lessor is justified in withholding consent.

Appellant contends that no evidence was introduced to show the standard under which the original lessor accepted Campbell as a tenant and that therefore it was error to instruct the jury that "consent is not to be withheld unless the prospective lessee is

unacceptable, using the same standards as in accepting the original lessee." We agree with appellee, however, that such evidence was not lacking. It is true that no evidence was introduced showing Campbell's financial worth when he was accepted as a tenant, but Campbell testified that this information had not been requested from him and that the original landlord knew he had no previous experience in the nursery business. There was also evidence that the original landlord was partially motivated to lease the property to Campbell as a favor for a mutual friend. There was also testimony that the landlord had experienced trouble renting this particular portion of the shopping center. We find sufficient evidence as to the landlord's standards in accepting Campbell as a tenant was established.

■ The evidence also showed that Campbell supplied K & W with information about the assignees' financial position. *See D'Oca v. Delfakis,* 130 Ariz. 470, 636 P.2d 1252 (App.1981). The trial court properly instructed the jury that Campbell had this burden and that K & W would be justified in withholding consent if it was not furnished with adequate financial information. K & W's principals testified at trial that they were concerned about the assignees' financial status and that this was one of the reasons they withheld consent. Other evidence revealed, however, that K & W was not concerned with the assignees' financial condition and would have willingly consented to the assignment if they had agreed to a rent increase. There was testimony that K & W's only reason in refusing to consent to the assignment was to exact more rent money. A landlord's refusal to consent to an assignment because the landlord is unhappy with the low rent provided under the existing lease is unreasonable. *Magna Inv. & Dev. Corp. v. Brooks Fashion Stores, Inc.,* 137 Ariz. 247, 669 P.2d 1024 (App.1983), overruled on other grounds, *DVM Co. v. Stag Tobacconist, Ltd.,* 137 Ariz. 466, 671 P.2d 907 (1983). *See also Funk v. Funk, supra.* While K & W argues it was justified in believing it had a right to charge more rent since the lease

did not refer to the outside land being used, the evidence at trial was sufficient to show that it had no such right and also should have been aware that it had no grounds for charging more rent. Since there was sufficient evidence from which the jury could have found that K & W withheld consent for an improper reason, we will not disturb the judgment. *Sandblom v. Corbin,* 125 Ariz. 178, 608 P.2d 317 (App.1980).

## C.  CLAIM FOR INTENTIONAL INTERFERENCE WITH BUSINESS EXPECTANCIES

■ K & W argues that Campbell failed to establish every element of the tort of intentional interference with contract or business expectancies and that therefore the portion of the jury award granted for this claim must be set aside. The tort of intentional and unjustified third party interference with valid contractual relations or business expectancies has been recognized in Arizona and the definition of the tort given in the *Restatement of Torts* § 766 has been adopted as follows:

Except as stated in Section 698, [betrothal promises] one who, without a privilege to do so, induces or otherwise purposely causes a third party not to

a.  perform a contract with another, or

b.  enter into or continue a business relation with another

is liable to the other for the harm caused thereby.

*See Pre-Fit Door, Inc. v. Dor-Ways, Inc.,* 13 Ariz.App. 438, 440, 477 P.2d 557, 559 (1970); *Edwards v. Anaconda Co.* 115 Ariz. 313, 565 P.2d 190 (App.1977).

K & W contends that no case of intentional interference with business expectancies has been shown in this instance, because the only interference that took place in this case was K & W's interference in its own contract with Campbell. A party cannot be held liable in tort for intentional interference with its own contract. The *Restatement* definition adopted by the Arizona courts expressly recognizes that the

interference must be perpetrated against a third party. *See Houser v. City of Redmond*, 91 Wash.2d 36, 586 P.2d 482 (1978).

■ K & W argues that the only contract interfered with here was its lease with Campbell. K & W fails to recognize that Campbell had entered into a separate contract for the sale of his business. There were in fact two separate agreements and while K & W was a party to the lease, it was not a party to the contract for sale of the nursery. Campbell's tort claim arises from K & W wrongfully refusing to consent to the assignment of the lease, thus wrongfully interfering with the separate contract Campbell had to sell his business.

We note that in *D'Oca v. Delfakis, supra,* the plaintiff claimed that a landlord's failure to consent to an assignment of a lease constituted intentional interference with the business relationship, between himself and the prospective assignees. Division Two of this court observed that no facts supported the tort claim which alleged "the inducement of a third party to break a contract or not to enter a contract with the plaintiff." 130 Ariz. at 472, 636 P.2d at 1254. In that case, however, the only agreement between the lessee and the assignee was that the assignee was to replace the lessee under the lease. There was no separate contract for the sale and purchase of the lessee's business. We thus find the two cases distinguishable and conclude that the elements of the tort of intentional interference with contract were sufficiently demonstrated in this case.

## D. PROOF OF DAMAGES

Next K & W charges that Campbell failed to prove adequately his damages, and improperly claimed items that were not compensable. Specifically, K & W alleges that Campbell's claim for damages improperly included $46,000.00 in fixed improvements which would ultimately belong to K & W when the lease expired. We find that this characterization of Campbell's damage claim is not accurate.

■ Campbell sought damages based on the contract price he would have received for his nursery business minus the inventory retained and other expenses which were avoided when the sale fell through. He requested and the jury awarded $72,752.00. The price that a buyer would have paid for appellee's business reflected the right to use the improvements during the remainder of the lease including the optional five-year renewal at the low rent charged under the lease. Since Campbell was not successful in his nursery business, these assets had value to him only if he could sell the business to someone else. K & W's actions cost Campbell the chance to sell his business for $96,150.00 and effectively prevented him from making any other sale of his business. He was damaged to the extent of the loss of profit he would have made on the sale. We find that Campbell adequately proved the damages he suffered from K & W's interference.

## E. MITIGATION OF DAMAGES

■ K & W argues that Campbell failed to mitigate his damages and that, therefore, the jury's verdict is excessive. K & W supports this contention by claiming that Campbell left other personal property on the premises that he could have removed and subtracted from his claim for damages. We find this contention wholly unsupported by the evidence.

K & W also maintains that Campbell might have been able to mitigate his damages by obtaining another buyer for his business if he had negotiated with K & W. To the contrary, the evidence shows that Campbell had never been able to make a profit in the business, and that he was facing the upcoming summer months which, he testified, were the most unprofitable for a nursery business. Within six months, his lease would expire, and he would have to determine whether to exercise the option for an additional five-year term. Given the past difficulties in finding anyone interested in purchasing the business and the apparent unwillingness of K & W to consent to an assignment of the

lease without increasing the rental amount, we find that Campbell was not imprudent in the course of action he took. K & W has not shown that Campbell could have mitigated his damages.

### F. WAS THE DUTY TO CONSENT TO THE ASSIGNMENT NEGATED?

■ Next K & W alleges that Campbell had already assigned the lease before requesting its consent and that it therefore had no duty to consent. The record clearly shows this argument to be in error. Although the lessee and the prospective assignees had signed a document entitled "Assignment of Lease," this document expressly stated "this assignment of leasehold interest is contingent upon the lessor's consent and shall only become effective upon receipt, in writing, of the lessor's consent to assignment." This provision had the legal effect of preventing the assignment from being effective until the written consent of the landlord was obtained. The lessee at no time put the assignee in possession of the leasehold. Under these circumstances it cannot be said that an assignment of the lease took place.

### G. AWARD OF CONTRACT DAMAGES

■ K & W next argues that the record does not support contract damages and that the trial court erred in allowing this issue to go to the jury. We do not agree. The first count of Campbell's complaint sounds in contract. Campbell sought, in that count, any damages arising from the lessor's breach of contract in unreasonably withholding consent to the assignment. Campbell claimed damages resulting from either breach of contract or the tort duty of intentional interference with contract. The lessor's unreasonable withholding of consent was a breach of contract. Campbell was not called upon to elect between these remedies. We find no error in the trial court's instructing the jury that it could award damages for breach of contract.

■ We note that the jury awarded the full amount of damages Campbell requested, dividing it between the two claims in the amount of $5,750.00 for breach of contract and $67,002.00 for intentional interference with contract. While it is unclear why the jury would have split the award precisely in this fashion, the basis for making the total award is adequately supported by the record. We find no reversible error.

■ Additionally, K & W argues that it was inconsistent for the jury to conclude that K & W breached the contract and yet award K & W damages for the Campbell's failure to pay rent. We do not find the jury's conclusion inconsistent. Not all breaches of a contract release the breaching party from performance of its duties under the contract. In this case the jury obviously concluded that K & W's breach by wrongfully withholding consent to the assignment did not release Campbell from his duty to pay the rent due under the lease.

### H. ATTORNEY'S FEES

■ Finally, K & W argues that Campbell's request for attorney's fees should have been denied and that its request for attorney's fees should have been granted. K & W asserts that Campbell's claims sounded solely in tort and he was not entitled to attorney's fees pursuant to A.R.S. § 12–341.01, which allows attorney's fees in cases arising out of contract. Because K & W was successful on its claim to recover rent due under the lease, it was entitled to fees both as the successful party in a contract action pursuant to A.R.S. § 12–341.01 and pursuant to provisions in the lease expressly providing for attorney's fees.

We note that both parties requested attorney's fees in the trial court, Campbell seeking $22,000.00 in fees and K & W seeking $10,040.00 in fees. The trial court found that the matter arose out of contract and that the lease provided for attorney's fees to the lessor for collection of rent due under the lease. The court indicated that it had considered the relative successes of each party and awarded $11,960.00 in attor-

ney's fees to Campbell. This award had essentially the same effect as a set-off which resulted in both parties receiving the total amount of fees they requested.

We find no error in the trial court's determination that A.R.S. § 12–341.01 was applicable to all of the claims made in this case. Attorney's fees may be awarded under that statute for tort claims that are intertwined with contract claims. *ASH, Inc. v. Mesa Unified School District,* 138 Ariz. 190, 673 P.2d 934 (App.1983). It is clear that the trial court awarded K & W attorney's fees by setting off what it was entitled to against the award for Campbell. The trial court properly weighed the relative successes of the parties. An award of attorney's fees pursuant to A.R.S. § 12–341.01 is left to the sound discretion of the trial court. *Earven v. Smith,* 127 Ariz. 354, 621 P.2d 41 (App.1980). We find no basis for disturbing the award.

For all of the above stated reasons, the judgment herein is affirmed.

GRANT, P.J., and OGG, J., concur.