723 P.2d 97

**Ann PAPASTATHIS, surviving widow of the deceased, Peter Papasthathis, in her own behalf, and on behalf of Mary Ann Corson, a married woman, child of the deceased, Peter Papastathis, Plaintiffs/Appellees,**

v.

**Walter W. BEALL and Jane Doe Beall, his wife, and the Southland Corporation, a Texas corporation, Defendants/Appellants.**

No. 2 CA–CIV 5702.

Court of Appeals of Arizona, Division 2, Department A.

May 22, 1986.

Reconsideration Denied June 24, 1986.

Venable & Randall by Gilbert T. Venable and Davich & Pollock, Ltd. by Gerald A. Pollock, Phoenix, for plaintiffs/appellees.

Lewis and Roca by John P. Frank, John A. Miller, Janet Napolitano, Phoenix, for defendants/appellants.

HATHAWAY, Chief Judge.

Appellants challenge the jury's verdict in favor of appellees in a wrongful death action and the court's denial of their motions for new trial, judgment n.o.v. and remittitur. We find the record supports the verdict and affirm.

On September 2, 1981, Peter Papastathis, decedent, was in appellant Walter Beall's

(Beall) "7–11" store in Phoenix, Arizona. The franchisor, "owner and lessor" of the property is appellant Southland Corporation (Southland). Upon entering the store, Mr. Papastathis went to a cooler and bent down to make a selection. At the same time, Bobby Gene Latham, Beall's employee, was loading soft drink cans into the cooler's soft drink rack from inside the cooler. A can fell from the rack above Mr. Papastathis and hit him on the back of the head. It is disputed exactly how far the can fell; the distance was one to three feet. At the time, Mr. Papastathis had a pre-existing weakness in the arteries of his brain known as an aneurysm. An aneurysm is a weak spot in an artery which usually occurs at a juncture between arteries. Despite some complaints of double vision, a drooping right eye, dizziness, ringing in the ears and headaches during the ensuing 15 months, Mr. Papastathis' life proceeded normally. On November 30, 1982, however, while attempting to lift his wife, who suffers from multiple sclerosis, Mr. Papastathis had a seizure requiring emergency hospitalization. He died from a ruptured intracranial aneurysm on December 3, 1982.

On September 1, 1983, Mrs. Papastathis and her daughter sued Beall and Southland, alleging negligence. At trial, two theories were advanced: (1) that both Beall and Southland were vicariously liable for the negligence of Latham, and (2) that Beall and Southland were themselves negligent for selection of the soft drink cooler rack. Southland moved for a directed verdict on the ground that it was not vicariously liable for any alleged negligence by Beall or Beall's employees, and the court denied the motion. On May 1, 1985, the jury rendered a $500,000 verdict in favor of appellees. Appellants filed their motions for new trial, judgment n.o.v. and remittitur on May 21, 1985. The court signed an amended judgment in favor of Mrs. Papastathis on July 15, 1985, and entered the judgment nunc pro tunc to May 8, 1985. The court denied the motions for new trial, judgment n.o.v. and remittitur on July 17,

1985, and appellants filed their notice of appeal on July 30, 1985.

On appeal, appellants claim that appellees did not prove causation, arguing that the jury was allowed to speculate about the causes of Papastathis' death and that the evidence did not establish that the falling soda can was a substantial factor in the aneurysm's rupture. Appellants also allege that Southland Corporation is not liable for the alleged negligence of the franchisee because Southland did not exercise control over Beall sufficient to establish an agency relationship. Southland also argues that it is not liable for the selection of the rack and that admission of evidence of alternative rack designs was prejudicial error.

## I. CAUSATION

Appellants contend that the jury was improperly permitted to speculate that the incident at the 7–11 store was a substantial factor in the eventual demise of Mr. Papastathis. Under Arizona law, legal causation is established despite possible intervening causes if the conduct was a substantial factor in the eventual injury. *Ontiveros v. Borak*, 136 Ariz. 500, 667 P.2d 200 (1983); Ideal *Food Products Company v. Rupe*, 76 Ariz. 175, 261 P.2d 992 (1953). Since we will not substitute our opinion for that of the jury, our inquiry must be whether there was sufficient evidence before the jury from which it could have found that the incident at the 7–11 was a substantial factor in Mr. Papastathis' death. See *Petefish v. Dawe*, 137 Ariz. 570, 672 P.2d 914 (1983); *Farm Aero Service, Inc. v. Henning Produce, Inc.*, 23 Ariz.App. 239, 532 P.2d 181 (1975).

At trial, appellees called two experts witnesses who linked the 7–11 incident to the eventual rupture of the aneurysm. One expert, Dr. Crowell, stated that the blow from the falling can caused the aneurysm to expand and to press against the third cranial nerve leading to the specific aneurysm symptoms. He stated that once an aneurysm expands, the threat of rupture is continuous. He also testified that the

forces testified to by the engineering witness were significant and explained that tiny manipulations can cause disastrous ruptures of aneurysms. Dr. Crowell stated specifically, "I think there is a strong temporal relationship between the blow of [sic] the head and the appearance of the new symptoms which he didn't have prior to that period." Appellants' experts disagreed with appellees' experts, and there was testimony that hypertension and activities such as lifting, bending, squatting, sexual intercourse and straining at the stool are common causes of ruptured aneurysms. Mr. Papastathis was overweight, suffered from high blood pressure and consistently lifted his ill wife. While the jury did have conflicting evidence before it, it obviously accepted the testimony of appellees' witnesses. The trauma to a pre-existing condition causing the worsening of that condition was a substantial factor in his eventual death and is a basis for liability. *Coca-Cola Bottling Company of Tucson v. Fitzgerald*, 3 Ariz.App. 303, 413 P.2d 869 (1966); *Curbo v. Harlan*, 253 Ark. 816, 490 S.W.2d 467 (1973); *Hastie v. Handeland*, 274 Cal.App.2d 599, 79 Cal.Rptr. 268 (1969); *Austin v. Otis Elevator Company*, 336 So.2d 914 (La.App.1976).

In *Austin*, the decedent was injured in an elevator accident. As in our case, Austin had an aneurysm which received some trauma in the accident. He died during surgery on that pre-existing condition some weeks later. The appellate court upheld the judgment, finding that there was sufficient evidence from which the trier of fact could conclude that but for the accident, Austin would have had a greater chance of survival.

In the present case, there was evidence that but for the accident, Mr. Papastathis would not have died of the ruptured aneurysm. We do not weigh the conflicting evidence. The jury chose to believe appellees' experts. We hold that there was sufficient evidence from which the jury could have found causation.

## II. NEGLIGENT SELECTION

Appellants do not dispute that the jury could have found the employee Latham negligent. It is clear from the evidence that he should have noticed Mr. Papastathis using the cooler at the time he was loading the cans and refrained from loading until Mr. Papastathis had moved. The vicarious liability of appellant Beall is also readily apparent. Southland, however, contests its vicarious liability for Latham's actions and its own liability for selection of the rack.

The racks in question were furnished to the franchisee by the Coca Cola Company. Coca Cola approached Southland about placing these racks in their stores. Southland employees testified that they requested each franchisee's permission before allowing Coca Cola to install the racks. At trial, appellees alleged that the racks had a safety problem in that the bar at the front of the rack did not extend to the midpoint of the can, making it possible for the cans to pop out of the rack. Appellees brought in evidence of other racks available at the time which had a safer design.

When Southland's regional manager selected the rack, he did consider the safety problem of whether the rack would hold the cans. When asked whether he did any specific testing with regard to this safety problem, he responded, "Very little. However, we rolled the cans down the rack to see if they stopped." Southland argues first that it owed no duty to Papastathis with regard to the rack in that it neither owned, maintained nor required its franchisee to use it, and second, that Southland had no knowledge of any defect in the rack and thus acted reasonably in offering the rack to its franchisee. Appellees cite us to § 388 of the Restatement (Second) of Torts, which defines the liability of suppliers of chattels. In reality, however, Southland is not a supplier of these racks. Coca Cola Company supplied the racks to the franchisee. According to § 388, comment *c*, a supplier is either a seller, lessor, donor or lender of chattel. Since Coca-Cola at all times owned the racks and Coca-Cola gave

possession to the franchisee, Southland cannot possibly fit within the above-mentioned categories. Southland's connection to these racks was in inspecting, suggesting and endorsing these racks to its franchises. In effect Southland was the facilitator of this arrangement. Southland did, however, voluntarily undertake to request that franchisees install the racks in their stores.

While in Arizona gratuitous suppliers or donors of chattels may be held liable for negligent inspection, *Ellis v. Caristi,* 117 Ariz. 279, 572 P.2d 107 (App.1977); Restatement (Second) of Torts, §§ 388, 405 (1965), we have found no case law paralleling the current situation. Therefore, in the absence of pertinent Arizona case law, we will follow the rules established by the Restatement of Law. *MacNeil v. Perkins,* 84 Ariz. 74, 324 P.2d 211 (1958). Section 324(A) of the Restatement provides:

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if (a) his failure to exercise reasonable care increases the risk of such harm, or (b) he has undertaken to perform a duty owed by the other to the third person, or (c) the harm is suffered because of reliance of the other or third person upon the undertaking."

See also § 323 of the Restatement (Second) of Torts. In this case, Southland undertook to perform the service for its franchisees of inspecting, endorsing and recommending the rack to be furnished by Coca Cola. The jury apparently found Southland negligent in its inspection and choice of that rack. Therefore, Southland's failure to exercise reasonable care increased the risk of harm to the third party, in this case, Mr. Papastathis.

Numerous cases have held that once a party gratuitously agrees to inspect and a third party is subsequently injured, that party can be held liable for its negligent inspection. See, e.g., *Heinrich v. Goodyear Tire & Rubber Company,* 532 F.Supp. 1348 (D.Md.1982); *Johnson v. Aetna Casualty & Surety Company,* 348 F.Supp. 627 (M.D.Fla.1972); *U.S. Fidelity & Guaranty v. Jones,* 356 So.2d 596 (Ala. 1976); *Sexton v. American Aggregates,* 60 Mich.App. 524, 231 N.W.2d 449 (1975).

■ Indeed, there is case law interpreting § 324(A) which parallels the current situation. In *Wise v. Kentucky Fried Chicken Corporation,* 555 F.Supp. 991 (D.N.H.1983), the franchisor, Kentucky Fried Chicken, suggested to its franchisee a certain type of pressure fryer. An employee of the franchisee was subsequently injured by that allegedly defective fryer. The court held that pursuant to § 324(A) the franchisor could be held liable for the negligent performance of its undertaking to inspect and to recommend that particular product. Therefore, under our facts, Southland may be held liable for its negligent selection, recommendation and inspection of the dispenser racks. See also, *Sheridan v. Greenburg,* 391 So.2d 234 (Fla.App. 1980). We hold, therefore, that there was a proper issue of Southland's negligence to be presented to the jury.

■ Southland argues, however, that it was prejudiced by the introduction into evidence of alternative rack designs that were allegedly safer than the design of the Coca Cola racks. Southland correctly states that the measure of its negligence is not whether the racks chosen were the safest possible, but whether they exercised reasonable care in selecting the racks. This does not mean, however, that the evidence of the alternative rack design was irrelevant. The alternative racks were clearly probative of Southland's negligence in selecting the particular rack in light of the fact that safer designs were available.

■ In addition, Southland argues that Rule 403, Rules of Evidence, 17A A.R.S., should have prevented introduction of alternative racks into evidence. Rule 403 states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by its danger of un-

fair prejudice...." Southland seems to be arguing that the unfair prejudice in admitting the evidence of the racks substantially outweighed its probative value. The determination of a trial judge as to whether probativeness of offered evidence is substantially outweighed by its unfair prejudice will not be disturbed on appeal absent a showing of abuse of discretion. *English-Clark v. City of Tucson*, 142 Ariz. 522, 690 P.2d 1235 (App.1984). We do not find that the court abused its discretion in this case.

The rule in Arizona is that, in the absence of a request that the jury bring in a special verdict on each count if several counts, issues or theories are tried and submitted to the jury, a general verdict will stand if evidence on one count, issue or theory is sufficient to sustain the verdict. *Reese v. Cradit*, 12 Ariz.App. 233, 469 P.2d 467 (1970). Since we have determined that the jury could have found appellant Southland liable on negligent selection and appellant Beall liable for employee Latham's negligence, we need not address the issue of Southland's vicarious liability.

Affirmed.

HOWARD, P.J., and FERNANDEZ, J., concur.