766 P.2d 91

**PROFESSIONAL SPORTS, INC., an Arizona corporation, Third Party Plaintiff–Appellant,**

v.

**GILLETTE SECURITY, INC., an Arizona corporation, Third Party Defendant–Appellee.**

No. 1 CA–CIV 9305.

Court of Appeals of Arizona, Division 1, Department A.

Sept. 6, 1988.

Review Denied Jan. 31, 1989.

Jones, Skelton & Hochuli by Edward G. Hochuli and Larry J. Cohen, Phoenix, for third party plaintiff-appellant.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears by Michael W. Carnahan and Raymond D. Romero, Phoenix, for third party defendant-appellee.

## OPINION

GREER, Judge.

This appeal raises questions concerning a security company's liability as a joint tortfeasor. Since this is an appeal from a summary judgment, we review the facts most favorably to the appellant. *State ex rel. Corbin v. Sabel,* 138 Ariz. 253, 674 P.2d 316 (App.1983).

The appellant, Professional Sports, Inc., also known as the Phoenix Giants (Professional), leased and operated the Phoenix Municipal Stadium, including the internal concession stands. The appellee, Gillette Security, Inc. (Gillette), had a contract with Professional to provide security at the stadium during baseball games. Pursuant to the contract, guards employed by Gillette were required to "patrol and secure" the stadium and adjacent parking lot. Gillette told its guards to do whatever the Phoenix Giants requested them to do, and the Phoenix Giants instructed the guards to monitor alcoholic beverage service and consumption inside its grounds. This included the detection of underaged persons attempting to purchase and consume alcohol. Guards were assigned to posts near the concession stands where Professional's employees sold beer. They were also assigned to patrol the stands and had the authority to "take necessary action," which included ejecting people from the stadium.

This case arises out of an accident which occurred near the stadium in July, 1983. David Ford, then 16 years old, attended a Phoenix Giants baseball game at the stadium with two friends, both 17 years old. The legal drinking age at that time was 19 years. The game that evening was promoted and advertised on the radio as "KDKB 50¢ Beer Night." A major attraction was the reduced price for beer. Although David does not recall purchasing any beer, his friends purchased between six and eight rounds at the stadium's concession stands. During the course of the game, David drank and became increasingly intoxicated and unruly.

Late in the game, David and his friends left the stadium. David was obviously intoxicated—he was stumbling and slurring his speech. The three boys wandered about the parking lot and eventually made their way to Van Buren Street. As David attempted to cross the street, an automobile struck and severely injured him.

David filed an action against Professional and various other defendants not pertinent to this appeal. The complaint alleged, in part, that Professional was negligent in furnishing alcohol to David, then a minor, and allowing him to become intoxicated. Professional filed a third-party complaint against Gillette for contribution pursuant to A.R.S. § 12–2501 *et seq.* (Supp.1987).[1] Professional later settled with David. Gillette then moved for summary judgment, claiming it owed David no duty and therefore could not be a joint tortfeasor with Professional for the purpose of contribution. The trial court granted Gillette's motion, and Professional brought this appeal.

The issues raised on appeal include:

(1) Did the contract between Professional Sports and Gillette Security create a duty?

(2) Did Gillette voluntarily undertake conduct so as to acquire a duty to David?

(3) Did Gillette have a statutory duty pursuant to A.R.S. §§ 4–241(A) and 4–244(9)?[2]

---

1. *But see* Laws 1987, ch. 1, § 1, effective January 1, 1988, abolishing joint and several liability of tortfeasors.

2. At the time of David Ford's accident, A.R.S. § 4–241(A) provided:

   A licensee, employee or other person who questions or has reason to question whether or not a person ordering, purchasing, attempting to purchase or otherwise procuring or attempting to procure the serving or delivery of spirituous liquor, is nineteen years old, shall require the person to exhibit an identification card and on a card to be retained by the licensee to sign his name, the date, and number of such identification card....

*See* Laws 1983, ch. 91, § 2. The provision was amended by Laws 1984, ch. 67, § 4, making the legal drinking age twenty-one years.

Pursuant to A.R.S. § 4–244(9) as it read then, it was unlawful

   [f]or a licensee or other person to sell furnish, dispose of, give or cause to be sold, furnished, disposed of or given to a person under the age of nineteen years, or for a person under the age of nineteen years to buy, receive, have in possession or consume, spirituous liquor....

*See* Laws 1983, ch. 91, § 4. This provision was similarly amended by Laws 1984, ch. 67, § 5, to read "twenty-one years," instead of "nineteen years."

(4) Did Gillette have a duty to protect David from further harm after he became intoxicated?

Since we conclude that the contract between Professional and Gillette created a duty in negligence to protect minors such as David Ford from illegally consuming alcohol, we need not consider the remaining issues.

## NEGLIGENCE IN GENERAL

To maintain an action in negligence, four elements must be shown: (1) duty, (2) breach of duty, (3) causation, and (4) damages. *Ontiveros v. Borak*, 136 Ariz. 500, 504, 667 P.2d 200, 204 (1983). The question on appeal is whether Gillette had a duty to persons such as David Ford. A duty must be recognized by law and must obligate the defendant "to conform to a particular standard of conduct in order to protect others against unreasonable risks of harm." *Markowitz v. Arizona Parks Board*, 146 Ariz. 352, 354, 706 P.2d 364, 366 (1985). Whether a duty exists is usually a question of law for the court to decide. *Id.*

In Arizona, a supplier of liquor has a common law duty to use reasonable care in supplying liquor to underage individuals who, "by reason of immaturity or previous over-indulgence, may lack full capacity of self-control and may therefore injure themselves, as well as others." *Brannigan v. Raybuck*, 136 Ariz. 513, 516, 667 P.2d 213, 216 (1983).[3] There is no doubt that, as a matter of law, Professional, the supplier of liquor at Phoenix Municipal Stadium, had a duty to protect minors such as David Ford. Further, there is no doubt that Professional breached its duty. The question here, however, is whether Gillette *also* had a duty to protect Ford and others like him, even though it was not the supplier of liquor and therefore did not have a duty at common law. *See Brannigan, supra.*

On appeal, Professional argues (1) that Gillette acquired a contractual duty when it agreed, as an independent contractor, to help control the purchase and consumption of alcohol at the stadium, and (2) that the general responsibilities of a security company would include such a duty. Gillette, on the other hand, argues that, because it never undertook such a duty and had no duty as a matter of law, summary judgment in its favor was proper.

## GILLETTE'S DUTY

In *Papastathis v. Beall*, 150 Ariz. 279, 723 P.2d 97 (App.1986), Division 2 of this court held that a franchisor who undertook the responsibility of recommending and inspecting certain soft drink racks to be used by its franchisees could be liable to third parties for the negligent performance of those duties. A customer of one of the franchisees was injured when a soft drink can fell off a rack which had been inspected and endorsed by the franchisor. The court relied upon § 324(A) of the *Restatement (Second) of Torts* (1984), which states:

One who *undertakes*, gratuitously or *for consideration,* to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

(Emphasis added.) The court concluded that the franchisor's failure to exercise reasonable care increased the risk of harm to the third party, the injured plaintiff. *Papastathis*, 150 Ariz. at 282, 723 P.2d at 100.

Section 324(A) of the *Restatement* has been applied in many types of situations, including those involving security guards. For example, in *Gold Mills, Inc. v. Orbit Processing Corp.*, 121 N.J.Super. 370, 297 A.2d 203 (1972), a New Jersey court held

---

**3.** A similar statutory duty is provided in A.R.S. §§ 4–241(A), –244(9), and –311 (Supp.1986).

*See also* Laws 1986, ch. 329, § 1, effective August 13, 1986.

that a security company which negligently performed its contract to guard certain premises was liable for the theft of a third party's goods stored on the premises. The court concluded:

> The context of the facts in our case also falls within the provision of § 324A(b) *[Restatement (Second) of Torts]*. Defendant, by undertaking the contract to provide guards at the plant of Orbit, assumed in part at least a duty which Orbit owed to plaintiff, and it did so with the reasonable foreseeable consequence that if it failed to exercise due care, the owners of the goods at Orbit processing plant might be damaged. The Restatement rule would impose liability under such set of facts.

297 A.2d at 207; *see also, Wiles v. Grace Petroleum Corp.*, 671 P.2d 682 (Okla.App. 1983). The court noted, however, that liability will attach only if the contractor has commenced performance of the contract. *Gold Mills*, 297 A.2d at 206. Thus, the contractor is not liable if he fails entirely to perform the contract. *Id.; see also, Abel Holding Co. v. American Dist. Tel. Co.*, 138 N.J.Super. 137, 350 A.2d 292 (1975), *aff'd*, 147 N.J.Super. 263, 371 A.2d 111 (App.Div.1977); *Tucker v. Sandlin*, 126 Mich.App. 701, 337 N.W.2d 637 (1983).

The uncontroverted evidence in this case shows that Gillette had a contract with Professional requiring it to patrol and secure the stadium premises. Gillette told its guards to do whatever the Phoenix Giants management asked them to do towards that end; and Ethan Blackaby, the general manager of the Giants, who was also an officer with Gillette, instructed Gillette's security guards to police the concessions where beer was sold, check for underaged persons attempting to purchase beer, check the stands for underage drinkers, control the crowd (including patrons who became drunk and unruly), and to take whatever action was necessary to maintain the peace on the premises. Thus, these instructions were given by both Professional and Gillette.

Professional argues that Gillette undertook certain responsibilities when it accepted these instructions pursuant to the contract and agreed to supervise the purchase and consumption of alcohol on the premises. Gillette, however, maintains that it did not undertake any affirmative action by which it acquired a duty to third persons such as Ford. This, it claims, distinguishes this case from the cases discussed above. *E.g., Gold Mills; Abel; Tucker, supra.* It points out that in *Randolph v. Arizona Board of Regents*, 19 Ariz.App. 121, 505 P.2d 559 (1973), Division 2 concluded there were no allegations in the complaint from which it could be inferred that the University of Arizona had assumed a duty to protect the plaintiff from disease or sickness, *id.* at 123, 505 P.2d at 561, and it argues that the same reasoning should apply here.

Gillette acknowledges that instructions were given, but argues that giving "mere instructions," without some affirmative action, *see, e.g., Gold Mills*, does not mean that it acquired a duty. It points out that there is no evidence in the record that, on the night of the accident, the security guards 1) sought to check the age of David Ford or his friends, 2) attempted to detect underaged alcohol purchasers, 3) attempted to prevent the sale of alcohol to minors, or 4) attempted to prevent David Ford from consuming alcohol. Therefore, Gillette reasons, it never commenced performance of its obligation to control underaged drinking.

Gillette's reliance on the absence of this evidence is misplaced. This evidence goes to the question of the specific details of Gillette's conduct, rather than whether it acquired a duty by agreeing to perform these functions. We therefore disagree with Gillette's characterization of these facts as indicating it did not undertake conduct to acquire a duty. *Markowitz*, 146 Ariz. at 355, 706 P.2d at 367; *McDonald v. Smitty's Super Valu, Inc.*, 157 Ariz. 316, 318, 757 P.2d 120, 122 (App.1988). It is undisputed that Gillette's guards were on duty the night of the accident. Thus, at the very least, Gillette commenced performance of its obligation to provide security services pursuant to its contract, which included the control of underaged drinking.

Viewing the facts most favorably to Professional Sports, the only reasonable inference is that Gillette commenced performance of its contract with Professional, which included preventing underaged persons such as David Ford from purchasing and consuming alcohol. In so doing, Gillette undertook, for consideration, to render services to Professional which it should have recognized were necessary to protect third-party patrons of the ball park, including underaged drinking patrons. More specifically, it undertook to perform Professional's duty under *Brannigan*, 136 Ariz. at 516, 667 P.2d at 216, to use reasonable care in supplying liquor to underaged individuals. *See also*, A.R.S. §§ 4-241(A), -244(9), and -311 (Supp.1986). Thus, it is potentially liable to David Ford for physical harm he suffered if it failed to exercise reasonable care in performing the duties it undertook pursuant to contract. *Restatement (Second) of Torts* § 324(A), subsections (a), (b) and (c); *Papastathis*, 150 Ariz. 279, 723 P.2d 97.

Professional also relies on *Forbes v. Romo*, 123 Ariz. 548, 601 P.2d 311 (App. 1979), for the premise that a duty to a third party to exercise due care may arise from a contractual relationship. It again points out that, pursuant to the contract, Gillette instructed its employees to follow the instructions given by Professional Sports and that Professional instructed the guards to prevent the purchase and consumption of alcohol by minors. Gillette argues, on the other hand, that *Forbes* does not apply because it concerns only the duty arising out of a contractual relationship between a landlord and his tenants.

Under *Forbes*, a contractual relationship can give rise to an obligation in tort. In *Forbes*, Division 2 held that, because of the contractual relationship between a tenant and a landlord, the duty to exercise due care arose toward a third party who, in that case, was another tenant. The court noted that, although generally a relationship (i.e., privity) between the negligent and injured party is necessary for there to be a duty, in some situations, it is not required. The court further concluded that, although a duty might have been owed in that case, reasonable minds could not differ that the tenant was not negligent. It therefore affirmed the summary judgment in the tenant's favor. 123 Ariz. at 551, 601 P.2d at 314.

In this case, it is undisputed that Gillette had a contract with Professional requiring it to patrol and secure the stadium premises. This included patrolling for the detection and prevention of underaged drinking. Therefore, reasonable minds could not differ that Gillette had a duty to exercise due care for the benefit of third parties like David Ford. *Id.* at 551, 601 P.2d at 314. As in *Forbes*, privity of contract between Gillette and Ford, the injured third party, was not necessary.

Gillette's reliance on *Contempo Constr. Co. v. Mountain States Tel. and Tel. Co.*, 153 Ariz. 279, 736 P.2d 13 (App.1987), is misplaced. In that case, Division 2 held that Mountain States Telephone had no duty to the City of Phoenix' contractor to move Mountain States utility poles. The court held that there was neither a contractual relationship between the parties nor a duty in negligence. It based the latter holding on the fact that there was no relationship between the utilities and the contractor to give rise to a legal duty. *Id.* at 283-84, 736 P.2d at 17-18. The court did not address the issue presented here, whether a duty to *third parties* could arise from a contractual relationship. Thus, its holding that a relationship between the injured party and alleged tortfeasor was necessary to show a duty existed has no bearing on this case, where a relationship between the injured third party and alleged tortfeasor is *not* required.

In its discussion of duty, *Contempo* quoted Prosser on Torts: "No better general statement can be made than that the court will find a duty where, in general, reasonable persons would recognize it and agree that it exists." *Id.* at 283, 736 P.2d at 17, *quoting* W. Prosser and W. Keeton, *The Law of Torts* § 53, at 359 (5th ed. 1984). Reasonable persons would agree that security guards who undertake for hire to patrol a stadium have a duty to exercise due care for the protection not only of the stadium, but of the stadium's patrons.

## GILLETTE'S BREACH

Gillette next argues that, even if it owed a duty, it did not commit a breach. It points out in its discussion of its second issue on appeal (whether it acquired a duty) that it provided crowd control on the night Ford's friends illegally purchased alcohol and that it exercised reasonable care in performing these duties. The question of breach is generally one of fact. Gillette argues, however, that there is no evidence that it fell below the applicable standard of care and that summary judgment was therefore proper. We disagree. There is evidence in the record which may indicate that, although Gillette's guards were on duty, they failed to detect or prevent underaged persons from purchasing and consuming alcohol or to take any action in response to David Ford's obviously loud and unruly behavior.

Unlike *Forbes* then, the question of whether Gillette breached its duty is one on which reasonable minds could differ; therefore, it must be resolved by the finder of fact. On remand, the factfinder must determine whether Gillette failed to exercise reasonable care, thereby increasing the risk of harm to third parties such as David Ford. At this point, the evidence Gillette claims is lacking becomes relevant in determining whether Gillette exercised reasonable care or acted as a reasonable security service. *See, e.g., Marois v. Royal Investigation and Patrol, Inc.*, 162 Cal.App.3d 193, 208 Cal.Rptr. 384 (1984). Thus, Gillette's guards' admitted failure to check the ages of David Ford and his friends, and their failure to attempt to detect or prevent underaged persons from purchasing or consuming alcohol in general can be considered in determining whether Gillette breached its duty.

## CONCLUSION

We therefore conclude that the contract between Professional and Gillette was an undertaking for consideration within the meaning of § 324(A), *Restatement (Second) of Torts*, which created a duty on Gillette's part to exercise reasonable care to protect minor patrons of the stadium such as David Ford from illegally consuming alcohol. Whether it breached its duty and its degree of fault as a joint tortfeasor with Professional Sports are questions to be determined by the finder of fact.

Professional has requested an award of reasonable attorney's fees incurred in furtherance of this appeal. Professional is entitled to an award of attorneys' fees under A.R.S. § 12–341.01(A) and Rule 21(c), Ariz.R.Civ.App.P. *See also, Campbell v. Westdahl*, 148 Ariz. 432, 715 P.2d 288 (App. 1985) (attorney's fees may be awarded under statute for tort claims that are intertwined with contract claims). It may establish the amount of its award for attorney's fees incurred on appeal by complying with Ariz.R.Civ.App.P. Rule 21(a) and (c).

In accordance with this decision, the summary judgment in favor of Gillette is reversed and this matter remanded to the trial court for a trial on the merits.

JACOBSON, P.J., and HAIRE, J., concur.