**Darlene NEWTON and Stan Newton, Appellants,**

v.

**Enid MAGILL and Estate of Fred Magill, dba Magill's Trailer Park, Appellees.**

No. S–5219.

Supreme Court of Alaska.

April 29, 1994.

Rehearing Denied May 17, 1994.

11. Our disposition makes it unnecessary to ad-

dress any remaining contentions of the parties.

---

Fred W. Triem, Sharon A. Kornman, and Michael P. Ledden, Petersburg, for appellants.

T.G. Batchelor, Batchelor, Brinkman & Pearson, Juneau, for appellees.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS and COMPTON, JJ.

## OPINION

MATTHEWS, Justice.

 This is a slip and fall case brought by a tenant against her landlord. The superior court granted summary judgment in favor of the landlord based on the traditional common law rule that a landlord is generally not liable for dangerous conditions in leased premises. We hold that this rule no longer applies in view of the legislature's enactment of the Uniform Residential Landlord and Tenant Act, and therefore reverse.

## I. FACTS AND PROCEEDINGS

In the summer of 1988, Darline Newton moved from Idaho to Petersburg to join her husband, Stan, who had moved to Alaska a few months earlier. In Petersburg, Stan Newton had leased a house in a trailer park owned by Enid and Fred Magill.

The front door of the house opened onto a wooden walkway about six feet long and five feet wide. This walkway served the Newtons' house. It was partly covered by an overhanging roof, had no hand railing, and no "anti-slip" material on its surface.

On November 20, 1988, Darline Newton slipped and fell on the walkway, breaking her ankle. The Newtons filed suit against the Magills claiming that the walkway had been slippery and hazardous for a considerable period of time prior to the accident, that the Magills had a duty to remedy its condition, and that they negligently failed to do so.

The Magills moved for summary judgment on the ground that the tenants were responsible for "any slippery conditions resulting from rain" under both the common law and the Uniform Residential Landlord and Tenant Act (URLTA) as adopted in Alaska, AS 34.03.010–380. The Magills argued, further, that they could not be liable under a latent defect theory because the walkway was not defective; further, even assuming that it had a tendency to become dangerously slippery when wet, this hazard should have been obvious to the tenants. The superior court granted the motion. The court ruled:

> Plaintiff's ... claim is barred by Alaska's interpretation of the Uniform Residential Landlord [and] Tenant Act; AS 34.03.010–380. In *Coburn v. Burton*, 790 P.2d 1355, 1357 (Alaska 1990), the Supreme Court held that the landlord had the duty to keep common areas in a safe and clean condition, while at the same time, the tenant had a correlative duty to keep areas occupied and used solely by the tenant in a clean and safe condition. Here, the injury did not occur in a common area. The plaintiff states that she slipped and fell on the entryway, which was for the sole use of the plaintiff to enter the single-family residence. Pursuant to *Coburn*, the plaintiff had the duty to keep the entryway in a clean and safe condition. The defendant could not have breached the plaintiff's duty.
>
> Additionally, there is no evidence that the entryway was latently defective. The plaintiff even admits that no complaints were made to the defendant about the entryway.

The Newtons moved to reconsider. The court denied the motion in a written order which stated, after noting that the accident occurred in an area which the Newtons had a duty to maintain:

> Nevertheless, the Newtons argue that other circumstances involved here should require the burden to remain with the Magills. They argue that the entryway had latent or design defects. The fact that the entryway did not have a handrail, a gutter on the roof, or anti-slip material on the boards are not latent defects. These conditions existed in plain view and the Newtons knew these conditions existed. This is not a case involving a guest unfa-

miliar with the house or entryway. Mrs. Newton lived in the house for nearly five months before the fall. The Newtons used the entryway daily and it rained on numerous days before [the accident].

Even if the lack of a gutter and a handrail could be considered design defects, given the width of the entryway and its outside location, it is difficult to see, and the Newtons have offered no evidence to suggest, how these fixtures would have played any role in preventing the accident. Furthermore, the parties have not argued that the handrail or the rain gutters are required by any building code, ordinance or statute.

The anti-slip material is not a design problem, but is a maintenance problem. As noted above, the duty to maintain the entryway rests with the Newtons.

(Footnote omitted.)

From this order the Newtons have appealed.

## II. *STANDARD OF REVIEW*

The Magills argue that the Newtons can only appeal the superior court's denial of their motion for reconsideration and that denial is reviewed under the abuse of discretion standard. Conversely, the Newtons claim that they are entitled to challenge the merits of the underlying summary judgment. The Newtons are correct.

■ Alaska Appellate Rule 204(a)(3) terminates the running of the appellate clock upon the timely filing of motions for reconsideration. After the superior court's disposition of a motion for reconsideration, Appellate Rule 204(a)(3)[e] sets the appellate clock back to zero and starts it again. Consequently, a litigant may appeal "from a judgment or order sought to be reconsidered" within thirty days from the denial of the motion for reconsideration under Alaska Civil Rule 77(k)(4). Thus, the Newtons' appeal from the superior court's denial of the motion for reconsideration presents the merits of the superior court's grant of summary judgment.

■ The Magills also argue that the lack of opposition to their motion for summary judgment reduces the standard of review

before this court. The text of Civil Rule 56 contradicts this argument:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, *if appropriate,* shall be entered against him.

Alaska R.Civ.P. 56(e) (emphasis added). Thus, even if a litigant does not oppose summary judgment, the superior court may grant the motion only if otherwise "appropriate" under Rule 56. *Weaver Bros., Inc. v. Chappel,* 684 P.2d 123, 126 (Alaska 1984). For this reason, this court should review the superior court's grant of summary judgment under the usual standard of review.

■ This court will uphold a summary judgment only if the record presents no genuine issues of material fact and "the moving party was entitled to judgment on the law applicable to the established facts." *Wassink v. Hawkins,* 763 P.2d 971, 973 (Alaska 1988). When the court makes this determination, "[a]ll reasonable inferences of fact from proffered materials must be drawn against the moving party ... and in favor of the non-moving party." *Sea Lion Corp. v. Air Logistics of Alaska, Inc.,* 787 P.2d 109, 116 (Alaska 1990). If in reviewing the summary judgment this court must answer questions of law, this court will "adopt the rule of law which is most persuasive in light of precedent, reason and policy." *Ford v. Municipality of Anchorage,* 813 P.2d 654, 655 (Alaska 1991).

## III. *DISCUSSION*

■ The Newtons describe Petersburg as a city where "constant drizzle" is "prevalent" except in the summer "when the rainfall is broken by periods of sun." They contend that the wet climate fosters the growth of a plant organism on exposed wooden boards, causing them to become dangerously slippery when wet. To guard against this tendency, the Newtons contend that permanent instal-

lation of some sort of anti-slip device is necessary. They argue that the general community standard in Petersburg is to install such devices.

Under the traditional common law rule governing the liability of a landlord, failure by the Magills to meet the community standard, assuming it exists, would be irrelevant. The traditional rule is that real property lessors are not liable to their tenants for injuries caused by dangerous conditions on the property. *City of Fairbanks v. Schaible*, 375 P.2d 201, 205 (Alaska 1962); Restatement (Second) of Torts §§ 335, 356 (1965). There are exceptions to this rule of non-liability. If the dangerous condition is not reasonably apparent or disclosed,[1] if it exists on a part of the premises which remains subject to the landlord's control,[2] if the landlord has undertaken to repair the condition,[3] or if the property is leased for a purpose which involves admission of the public,[4] the landlord is subject to liability for negligence. None of these exceptions applies to this case.

The general rule of landlord immunity follows from the conception of a lease as a conveyance of an estate in land under which the lessee becomes, in effect, the owner for the term of the lease. As such, the lease was subject to the principle of *caveat emptor.* The tenant had to "inspect the land for himself and take it as he finds it, for better or for worse." William L. Prosser, *Law of Torts* § 63 at 400 (4th ed. 1971).

The courts of a number of jurisdictions have begun to discard this common law rule, however, in favor of the principle that landlords are liable for injuries caused by their failure to exercise reasonable care to discover or remedy dangerous conditions. These courts have relied in part on statutory or common law warranties of habitability and in part on a belief that the rule of landlord immunity is inconsistent with modern needs and conditions.

The decision which began the trend imposing a general duty of care upon landlords was

*Sargent v. Ross*, 113 N.H. 388, 308 A.2d 528 (N.H.1973). *Sargent* involved the death of a tenant's four-year-old daughter in a fall from an outdoor stairway attached to an apartment house. The tenant brought a wrongful-death action against the landlord, alleging negligence in the construction and maintenance of the stairway. Evidence indicated that the stairs were dangerously steep and the railing was insufficient to prevent the child from falling over the side. The jury returned a verdict for plaintiff. *Id.* 308 A.2d at 529–30.

In affirming, the New Hampshire Supreme Court indicated that it might have analyzed the case as falling within an exception to the common law rule of landlord immunity, but declined to do so. Although the stairway was not a common passageway, the court might have strained to find that the landlord still retained some control over it; the court might also have found a hidden defect, at least as to the infant decedent; or the court might have found that the landlord had been negligent in making repairs to the stairway. Instead, the court stated: "We think that now is the time for the landlord's limited tort immunity to be relegated to the history books where it more properly belongs." *Id.* at 533. The court held that "landlords as other persons must exercise reasonable care not to subject others to an unreasonable risk of harm," *id.* at 534, and, more fully, "[a] landlord must act as a reasonable person under all of the circumstances including the likelihood of injury to others, the probable seriousness of such injuries, and the burden of reducing or avoiding the risk." *Id.* The court noted that this was a natural extension of a prior holding which had recognized an implied warranty of habitability in the landlord-tenant relationship. *Id.* at 533; *Kline v. Burns*, 111 N.H. 87, 276 A.2d 248 (1971).

Among the cases which have followed *Sargent* are *Mansur v. Eubanks*, 401 So.2d 1328 (Fla.1981); *Thompson v. Crownover*, 259 Ga. 126, 381 S.E.2d 283 (1989) (duty of care

---

**1.** *Schaible*, 375 P.2d at 205; Restatement (Second) of Torts § 358.

**2.** *Schaible*, 375 P.2d at 205; Restatement, *supra* §§ 360, 361.

**3.** Restatement, *supra* § 362.

**4.** *Id.* at § 359.

based on statutory warranty of habitability); *Stephens v. Stearns,* 106 Idaho 249, 678 P.2d 41 (1984) (statutory implied warranty of habitability cited); *Old Town Dev. Co. v. Langford,* 349 N.E.2d 744, 762 (Ind.Ct.App.1976); *Young v. Garwacki,* 380 Mass. 162, 402 N.E.2d 1045 (1980) (reliance in part on warranty of habitability); *Turpel v. Sayles,* 101 Nev. 35, 692 P.2d 1290 (1985); *Humbert v. Sellars,* 300 Or. 113, 708 P.2d 344 (1985) (relying on implied warranty of habitability in Oregon's URLTA); *Mariorenzi v. DiPonte,* 114 R.I. 294, 333 A.2d 127, 132 (1975); *Favreau v. Miller,* 156 Vt. 222, 591 A.2d 68 (1991); and *Pagelsdorf v. Safeco Ins. Co. of America,* 91 Wis.2d 734, 284 N.W.2d 55 (1979) (relying on implied warranty of habitability).

With the 1974 adoption in Alaska of the URLTA, the theoretical foundation of the traditional rule of *caveat emptor* has been undermined in this state as well.[5] Landlords subject to the act have a continuing duty to "make all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition." AS 34.03.100(a)(1). This means that landlords retain responsibility for dangerous conditions on leased property.

The duty of a tenant is to "keep that part of the premises occupied and used by the tenant as clean and safe as the condition of the premises permit[s]." AS 34.03.120(1). This obligation exists as part of the same statute which defines the landlord's obligation to "make all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition." AS 34.03.-100(a)(1). It follows that the legislature intended these obligations to be reconcilable. Reconciliation can be accomplished by interpreting the tenant's duty to pertain to activities such as cleaning, ice and snow removal, and other light maintenance activities pertaining to the safety of the premises which do not involve an alteration of the premises, whereas the landlord's duty relates to the physical state of the premises. This distinction is suggested by the phrase "as the condi-

tion of the premises permit[s]" in section 120(1). In context this must refer to the inherent physical qualities of the premises.

Our case law has also reflected the trend toward a more general duty of care for landlords. In *Webb v. City & Borough of Sitka,* 561 P.2d 731 (Alaska 1977), we rejected the prevailing common law view that a landlord's duty was controlled by the rigid classification of the person seeking compensation as a trespasser, licensee or invitee. Instead, we adopted a rule based on general tort law that an owner "must act as a reasonable person in maintaining his property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden on the respective parties of avoiding the risk." *Id.* at 733.

We now further expand the landlord's duty of care in aligning Alaska with the jurisdictions following *Sargent,* and thus reject the traditional rule of landlord immunity reflected in *Schaible.* We do this because it would be inconsistent with a landlord's continuing duty to repair premises imposed under the URLTA to exempt from tort liability a landlord who fails in this duty. The legislature by adopting the URLTA has accepted the policy reasons on which the warranty of habitability is based. These are the need for safe and adequate housing, recognition of the inability of many tenants to make repairs, and of their financial disincentives for doing so, since the value of permanent repairs will not be fully realized by a short-term occupant. The traditional rule of landlord tort immunity cannot be squared with these policies.

What we said in *Webb* concerning the nature of change in the common law is equally relevant to today's decision:

The common law is not a rigid and arbitrary code, crystallized and immutable. Rather, it is flexible and adapts itself to changing conditions. After all, the common law "is but the accumulated expres-

---

**5.** The commentary to the URLTA explicitly recognizes that the common law antecedents of existing landlord-tenant law are "inappropriate to modern urban conditions and inexpressive of the vital interests of the parties and the public which the law must protect." URLTA § 1.102 cmt. 7B, U.L.A. 434 (1985).

sions of the various judicial tribunals in their efforts to ascertain what is right and just between individuals with respect to private disputes." What may be considered a just disposition of a dispute at one stage of history may not be the same at another stage, considering changing social, economic and other conditions of society. *Webb*, (quoting *State v. Morris*, 555 P.2d 1216, 1223 (Alaska 1976) (Boochever, C.J., dissenting)).

Our rejection of the general rule of landlord immunity does not make landlords liable as insurers.[6] Their duty is to use reasonable care to discover and remedy conditions which present an unreasonable risk of harm under the circumstances. Nor does our ruling mean that questions as to whether a dangerous condition existed in an area occupied solely by the tenant or in a common area, or whether the condition was apparent or hidden, are irrelevant. These are circumstances which must be accounted for in customary negligence analysis. They may pertain to the reasonableness of the landlord's or the tenant's conduct and to the foreseeability and magnitude of the risk. In particular, a landlord ordinarily gives up the right to enter premises under the exclusive control of the tenant without the tenant's permission. The landlord's ability to inspect or repair tenant areas is therefore limited. In such cases "a landlord should not be liable in negligence unless he knew or reasonably should have known of the defect and had a reasonable opportunity to repair it." *Young v. Garwacki*, 380 Mass. 162, 402 N.E.2d 1045, 1050 (1980).

The trial court observed in this case that slipperiness can be regarded as a hazard which comes within the tenant's maintenance duties rather than the duties of the landlord to keep the premises safe. A tenant can throw sand onto wet and slippery boards. On the other hand, this method has limitations, especially in an area of near constant rainfall.[7] A jury could find that a landlord in such an area should take any one of a number of steps relating to the physical condition of the premises which would prevent a board walkway from becoming dangerously slippery when wet.

## IV. CONCLUSION

In our view genuine issues of material fact exist as to whether the appellees breached their duty to Darline Newton to exercise reasonable care in light of all the circumstances with respect to the condition of the walkway. Determination of whether that duty was breached should be left for the trier of fact. We therefore REVERSE the trial court's grant of summary judgment in favor of the Magills and REMAND this case for further proceedings.

BURKE, J., not participating.

---

6. We do not accept the Newtons' argument that a rule of strict liability should govern this case.

7. For example, the constant application of sand to a board walkway may be seen as defeating one of the purposes of a walkway, which is to minimize tracking substances into the house.