No.  95-288

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

SHIRLEY CALDER,

      Plaintiff and Appellant,

  v.

CARL ANDERSON and BONNIE ANDERSON,

      Defendants and Respondents.

FILED

FEB 26 1996

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the First Judicial District,
In and for the County of Lewis and Clerk,
The Honorable Dorothy McCarter, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

          Gene A. Picotte, Attorney at Law,
          Helena, Montana

      For Respondents:

          G. Curtis Drake, Keller, Reynolds, Drake,
          Johnson & Gillespie, Helena, MT  59601


Submitted on Briefs:  February 8, 1996

Decided:  February 26, 1996

Filed:

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

The plaintiff, Shirley Calder, filed a complaint in the First Judicial District Court in Lewis and Clark County in which she alleged that her landlords, Carl and Bonnie Anderson, were negligent. Andersons moved for summary judgment and the District Court granted their motion. We reverse the judgment of the District Court.

The issue on appeal is whether the District Court erred when it granted summary judgment.

## FACTUAL BACKGROUND

In March 1994 Shirley Calder and her husband rented an apartment from Carl and Bonnie Anderson. A set of steps leads from the entrance of the Calders' apartment to a sidewalk which leads to the tenants' parking area. The tenants' parking area consists of gravel and dirt and is located near one side of the sidewalk.

In her complaint, Calder alleged that on the afternoon of May 3, 1994, she exited her apartment, descended the staircase, and fell on the sidewalk at the base of the steps. She alleged that as a result of the fall, she sustained injuries to her lower back, hip, neck, and shoulder, and required hospitalization for three and one-half days.

Calder also stated in her complaint that the Andersons negligently failed to maintain the sidewalk in a safe condition and violated § 70-24-303, MCA, in the following manner:

> At all times material herein defendants negligently
> failed to keep said common area, to wit: Said concrete

2

walk in a clean and safe condition as they were required to do by § 70-24-303(1)(c), MCA, and permitted dirt, refuse, pebbles and other materials to accumulate and remain thereon so that said walk became and remained and was at the time of plaintiff's accident and injuries hereinafter alleged dangerous and unsafe to walk upon.

The Andersons answered the complaint and denied all allegations of negligence.

Shirley Calder testified by deposition that on the date of her accident she had descended the stairway leading from the door of her apartment and stepped onto the sidewalk, where her feet landed unexpectedly on rocks or gravel which caused her to skid for some distance before her feet flew out from under her and she landed face down. She further testified that she knew that she had skidded and lost control on small rocks because she felt the rocks through the soles of her shoes when she stepped down on them and because she and her husband later observed the skid marks caused by the rocks where her accident occurred.

The Andersons moved for summary judgment following Calder's deposition. They argued that there was no hidden defect on the premises and that they had no duty to warn Calder of the presence of gravel on the sidewalk because the gravel would have been clearly obvious had she looked.

The District Court granted the Andersons' summary judgment motion. The court found that Calder's injuries were not caused by a hidden or lurking danger which would subject the Andersons to liability. The court further stated that the rocks on the sidewalk would have been obvious to Calder if she had looked at the sidewalk

3

while she walked on it. Finally, the court stated that there was no evidence that the Andersons took any affirmative action to aggravate or create the alleged hazard, and therefore, that there was no basis for finding that they were negligent.

## DISCUSSION

Did the District Court err when it granted summary judgment?

This Court reviews a summary judgment order entered pursuant to Rule 56, M.R.Civ.P., based on the same criteria applied by the district court. *Brinkman and Lenon v. P & D Land Enterprises* (1994), 263 Mont. 238, 241, 867 P.2d 1112, 1114. Rule 56(c), M.R.Civ.P., provides that summary judgment is proper only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." We look to the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits to determine the existence or nonexistence of a genuine issue of material fact. *Ulrigg v. Jones* (Mont. 1995), 907 P.2d 937, 940, 52 St. Rep. 1198, 1199.

We first address the Andersons' contention that because Calder failed to cite § 70-24-303, MCA, in opposition to the Andersons' motion for summary judgment, she waived its consideration on appeal. The Supreme Court of Alaska considered a similar argument and, after reviewing Alaska's summary judgment rule, which is identical to Montana's, disagreed that the law applicable to a case could be waived. *Newton v. Magill* (Alaska 1994), 872 P.2d 1213, 1215. That court held that:

4

> [E]ven if a litigant does not oppose summary judgment, the superior court may grant the motion only if otherwise "appropriate" under Rule 56. *Weaver Bros., Inc. v. Chappel*, 684 P.2d 123, 126 (Alaska 1984). For this reason, this court should review the superior court's grant of summary judgment under the usual standard of review.
>
> This court will uphold a summary judgment only if the record presents no genuine issues of material fact and "the moving party was entitled to judgment on the law applicable to the established facts."

*Newton*, 872 P.2d at 1215.

The applicability of the controlling statute was raised in the District Court when, in Paragraph IV of her complaint, Calder alleged that "[a]t all times material herein defendants negligently failed to keep said common area, to wit: Said concrete walk in a clean and safe condition as they were required to do by § 70-24-303(1)(c), MCA." Paragraph IV of Calder's complaint was specifically denied by the defendants' answer.

Rule 56(c), M.R.Civ.P., provides in relevant part that:

> The judgment sought shall be rendered forthwith if the <u>pleadings</u>, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

(Emphasis added.)

It is clear from Rule 56 that the court must consider allegations in the pleadings unless they have been controverted by evidence presented by the opposing party. In this case, the defendants presented no evidence that the sidewalk was clean and safe at the time of Calder's fall and injury. In fact, neither the defendants' motion for summary judgment, nor the memorandum that

5

they submitted in support of that motion, addressed a landlord's duty to a tenant pursuant to the statute relied on in Calder's complaint. Calder's memorandum in opposition to the defendants' motion simply responded to the issues raised in the defendants' memorandum.

Once Calder alleged in District Court that the relevant statute had been violated and cited that statute to the court and opposing counsel, she did not have to re-argue that claim repeatedly in order to preserve the claim for appeal and to avoid waiver.

Calder maintains that violation of § 70-24-303, MCA, constitutes negligence per se. This Court has not directly addressed this issue. However, when considering identical statutory provisions, the Supreme Court of Alaska has held that they impose duties different from and greater than those imposed by common law. *Newton v. Magill* (Alaska 1994), 872 P.2d 1213. In that case, Darlene Newton, the plaintiff, slipped and fell on a walkway which led to the front door of her home which was rented from the defendants. *Newton*, 872 P.2d at 1214. She sued her landlords based on her allegation that the walkway was slippery and hazardous and that the landlords had a duty to make it safe. *Newton*, 872 P.2d at 1214. The trial court dismissed the plaintiff's complaint by summary judgment based on its conclusion that it was the plaintiff's duty to keep the walkway safe and clean. *Newton*, 872 P.2d at 1214. The Supreme Court noted that even though according

6

to traditional notions of Alaska common law a landlord has no duty to tenants for dangerous conditions on the property, Alaska's adoption of the Uniform Residential Landlord and Tenant Act changed and added to a landlord's obligations. That court concluded that since Alaska's act imposed a duty on the landlord to keep even those areas occupied and used by the tenant in a clean and safe condition, the landlord had a duty to use reasonable care to discover and remedy conditions which presented an unreasonable risk of harm, and that included the slippery condition of the walkway. Whether the condition was hidden or apparent was irrelevant. *Newton*, 872 P.2d at 1216-18. Based on the facts in that case, the Supreme Court of Alaska held that whether the landlord failed to exercise reasonable care in light of all the circumstances with respect to the condition of the walkway presented an issue of fact to be resolved by the jury. *Newton*, 872 P.2d at 1218.

Montana, likewise, adopted the Residential Landlord and Tenant Act in 1977. Among its provisions is § 70-24-303, MCA. Montana's adoption of that Act changed and added to the duties owed by property owners to their tenants.

Since § -303 of the Act was obviously intended by the legislature to be for the benefit and safety of tenants, a landlord's failure to comply with the statute is negligent per se. We have held that:

> The violation of statutes is negligence as a matter of law when the purpose of the statute is to protect a class of persons, the plaintiff is a member of that class, and the defendant is a person against whom a duty is imposed.

7

> *Azure v. City of Billings* (1979), 182 Mont. 234, 240-41, 596 P.2d 460, 464. The purpose of the statute also must be to protect against the kind of injury received by the plaintiff. *Rauh v. Jensen* (1973), 161 Mont. 443, 507 P.2d 520.

*Nehring v. LaCount* (1986), 219 Mont. 462, 468, 712 P.2d 1329, 1333.

Shirley Calder was a member of the class that § 70-24-303, MCA, was intended to protect; Andersons were members of the class on whom a duty was imposed; and Calder's slip and fall is the type of injury that the statute was designed to prevent. The Supreme Court of Michigan has held that violation of a similar statute established negligence per se. *See Morningstar v. Strich* (Mich. 1950), 40 N.W.2d 719. We agree with that holding.

Contrary to the suggestion in the dissenting opinion, neither the *Newton* opinion nor the *Morningstar* opinion are cited in this opinion based on the similarity of the facts in those cases to the facts in this case. *Newton* is cited for the legal proposition that the Residential Landlord and Tenant Act creates duties in addition to and greater than those imposed on property owners by the common law. *Morningstar* is cited for the proposition that violation of statutes which impose duties on a landlord to provide for the safety of his or her tenants is negligent per se. The facts of the cases are irrelevant.

Furthermore, the Arizona and Ohio cases cited and relied on in the dissenting opinion are of no assistance to us for purposes of resolving the issue presented in this case. Neither case applies

8

nor interprets a duty similar to the one which exists in Montana pursuant to § 70-24-303, MCA, and upon which this opinion is based.

Finally, the dissenting opinion's reliance on § 70-24-321(1)(b), MCA, to suggest that it was actually the tenant's duty to maintain the area where Calder fell is misplaced. That section of the Residential Landlord and Tenant Act pertains to that part of the premises which the tenant actually "occupies and uses." It does not pertain to common areas. Common areas are specifically addressed in § 70-24-303(1)(c), MCA, and place the duty of maintenance solely on the landlord.

According to the testimony of Shirley Calder, the sidewalk on which she fell was not in a clean and safe condition, and as a result, she fell and seriously injured herself. Calder testified that on the date of her accident she had descended the stairway leading from the door of her apartment and stepped onto the sidewalk, where her feet landed unexpectedly on rocks or gravel which caused her to skid for some distance before her feet flew out from under her and she landed face down. She knew that it was small rocks on which she skidded and lost control because she felt the rocks through the soles of her shoes when she stepped down on them, and she and her husband later observed the skid marks caused by the rocks where her accident occurred. Calder's testimony was sufficient to raise an issue of fact whether the defendants breached their duty owed to her pursuant to the Residential Landlord and Tenant Act.

9

Whether the condition which caused Calder's injury was "hidden or lurking," and whether or not the condition at the bottom of her stairway was one she should have been looking for and noticed are simply issues to be considered as part of the question of contributory negligence.

The dissenting opinion suggests that it is a proper function of this Court to decide as a matter of law when debris allowed to remain on a common walkway does or does not violate the obligation to keep the area clean and safe. The dissenting opinion suggests that the majority opinion has already passed judgment on that issue. However, that suggestion is incorrect. The majority opinion simply recognizes that pursuant to Article II, Section 26, of the Montana Constitution, and § 26-1-202, MCA, there is a right to have issues of fact tried by juries when the parties request a jury, or by the district court when the right to jury trial is waived. The dissent would have this Court apply that right on a sliding scale based on how impressed the members of this Court are with the merits of a party's claim or defense. However, to do so would substantially blur the distinct functions of the fact finder and appellate review.

For these reasons, we conclude that as landlords the Andersons had a duty to keep the area where Calder fell in a clean and safe condition. If they failed to do so they were negligent as a matter of law. Whether or not the Andersons breached their duty to Calder, and the extent to which that breach of duty, if any, was a

cause of Calder's damages, are issues of fact which must be decided by the trier of fact.

For these reasons, we reverse the order of the District Court and remand for further proceedings consistent with this opinion.

_____
                    Justice

We concur:

_____

_____

_____

_____
        Justices

11

Chief Justice J. A. Turnage, dissenting:

A cause of action in negligence consists of four elements: (1) duty; (2) breach of duty; (3) causation; and (4) damages. Hatch v. State Dept. of Highways (1994), 269 Mont. 188, 192, 887 P.2d 729, 732. While the existence of a duty is a question of law, the second element, whether that duty has been breached, is normally a question of fact to be determined by the finder of fact. Limberhand v. Big Ditch Co. (1985), 218 Mont. 132, 144-45, 706 P.2d 491, 498. However, when a defect is so slight that no prudent person could reasonably anticipate danger from it, but an accident happens which could only have been guarded against with extraordinary care and foresight, the question of the defendant's responsibility is one of law. Wiley v. City of Glendive (Mont. 1995), 900 P.2d 310, 313, 52 St.Rep. 714, 715.

In the present case, Calder stated by deposition that the sidewalk outside her apartment was usually dirty and that renters, the mailman, and other persons walking from the graveled driveway to the apartment building tracked gravel onto the sidewalk. She acknowledged, however, that she had never considered gravel on the sidewalk to be a danger to her and had not complained to the Andersons about the dirty sidewalk. Nothing in the record supports the idea that the few alleged pieces of gravel on the sidewalk in this case were either a known hazard or a hidden or lurking danger.

This Court has acknowledged the rule that universally known conditions should not be considered hazards. Luebeck v. Safeway Stores, Inc. (1968), 152 Mont. 88, 93, 446 P.2d 921, 924. We have

12

further recognized that the mere happening of an accident, in itself, is not evidence of negligence. Clark v. Norris (1987), 226 Mont. 43, 48, 734 P.2d 182, 185. The law does not require that for every injury there must be a recovery of damages, but only imposes liability for a breach of legal duty proximately causing injury. Clark, 734 P.2d at 185.

Can reasonable minds differ on whether pieces of gravel on a sidewalk adjoining a gravel parking lot establish a breach of legal duty by the property owner? The Court of Appeals of Arizona has said "No." Forbes v. Romo (Ariz. App. 1979), 601 P.2d 311.

> [A] possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them unless the possessor should anticipate the harm despite such knowledge and obviousness. The . . . possessor may have reason to expect harm to a visitor from known or obvious dangers, for example when the possessor has reason to expect that the invitee's attention may be distracted, so he will not discover what is obvious, or forget what he has discovered, or fail to protect himself against it. Since there is no such evidence here, the trial court was correct in awarding summary judgment in favor of the Romos.
>
> . . . . The very most Forbes has shown is that she slipped on a piece of gravel. Neither its size nor the length of time it was on the sidewalk has ever been shown. The record discloses only this lone, solitary piece of gravel on the sidewalk. We do not believe that reasonable minds would differ. Forbes has not shown that [the lessee of the store] was negligent.

Forbes, 601 P.2d at 313-14.

More recently, the Court of Appeals of Ohio affirmed a summary judgment that gravel on a walkway next to a gravel parking lot did not render the walkway unreasonably dangerous or create liability.

> Gravel on a walkway next to a gravel parking lot or driveway is, as held by the trial court, a "minor

13

imperfection, commonly encountered and expected." To hold defendants liable for such "trivial departures from perfection" would be to render them insurers for plaintiff's safety and "the law does not go that far."

Jones v. H. & T. Enterprises (Ohio App. 9 Dist. 1993), 623 N.E.2d 1329, 1333.

I agree with the reasoning of the Arizona and Ohio courts. I conclude that reasonable minds could not differ as to whether the presence of a few grains of gravel on a sidewalk next to a gravel driveway establishes negligence on the part of the property owner. We do not yet live in an eggshell society in which there is a tort remedy for every injury.

The majority opinion, in seeking to establish for the first time in Montana an actionable tort under § 70-24-303(1)(c), MCA, part of Montana's Residential Landlord and Tenant Act of 1977 (RLTA), has created a new liability that the majority opinion rests upon negligence per se. In doing so, the majority has stretched the RLTA to a point that approaches the mere happening of an accident as the basis for a tort claim to be decided by a jury.

In the State of Montana, on or in our streets, alleys and parking lots, owned by property owners and occupied by renters, there are to be found inevitably small pieces of gravel. How this could be avoided by a property owner defies reasonableness and common sense.

Section 70-24-303(1)(c), MCA, provides:

> (1) A landlord shall:
> . . . .
>
> (c) keep all common areas of the premises in a clean and safe condition[.]

14

The majority has taken this provision of our code and under the facts of this case has misapplied it.

The majority has also ignored provisions of the RLTA that place certain obligations and duties upon the tenant of the rented premises. Section 70-24-321(1)(b), MCA, provides:

**Tenant to maintain dwelling unit.** (1) A tenant shall:

. . . .

(b) keep that part of the premises that the tenant occupies and <u>uses</u> as reasonably clean and safe as <u>the condition of the premises permits</u>[.] [Emphasis added.]

Calder admits in her brief that she and her husband specifically assumed this obligation under their written lease.

Certainly, if the tenant's obligation is to keep the premises reasonably clean and safe as the condition of the premises permits--which is a reasonable provision--we should, as to reasonableness, not place any higher duty upon the landlord. The landlord's duty should be to keep the premises reasonably clean and safe as the condition of the premises permits.

The majority opinion finds support and comfort in Newton v. Magill (Alaska 1994), 872 P.2d 1213. I find it informative, however, to point out that the facts involved in <u>Newton</u> are entirely different from the facts involved in the case before this Court. In <u>Newton</u>, the landlord had constructed a wooden walkway from the front door of the house, six feet long and five feet wide, without a handrail, virtually uncovered, and with no "anti-slip" material on its surface. The Alaska premises was located in Petersburg, where persistent rains resulted in a constant drizzle

15

except in the summer when the rain is intermittent and the wet climate fosters the growth of plant organisms on exposed wooden boards causing them to become dangerously slippery when wet.

In Newton the permanent installation of the wooden walkway was accomplished by the landlord, who had notice over a long period of time of the wet boards and the hazard created for slipping. This is an entirely different fact scenario than that before this Court.

The majority has failed to cite a major, important part of the holding in Newton, letting the Alaska court's relevant comments slip by. The Alaska court stated:

> The duty of a tenant is to "keep that part of the premises occupied and used by the tenant as clean and safe as the condition of the premises permit[s]." AS 34.03.120(1). This obligation exists as part of the same statute which defines the landlord's obligation to "make all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition." AS 34.03.100(a)(1). It follows that the legislature intended these obligations to be reconcilable. Reconciliation can be accomplished by interpreting the tenant's duty to pertain to activities such as cleaning, ice and snow removal, and other light maintenance activities pertaining to the safety of the premises which do not involve an alteration of the premises, whereas the landlord's duty relates to the physical state of the premises. This distinction is suggested by the phrase "as the condition of the premises permit[s]" in section 120(1). In context this must refer to the inherent physical qualities of the premises.
>
> . . . .
>
> . . . The legislature by adopting the URLTA has accepted the policy reasons on which the warranty of habitability is based. These are the need for safe and adequate housing, recognition of the inability of many tenants to make repairs, and of their financial disincentives for doing so, since the value of permanent repairs will not be fully realized by a short-term occupant. . . .
>
> . . . .

16

Our rejection of the general rule of landlord immunity does not make landlords liable as insurers.[6] [[6]We do not accept the Newtons' argument that a rule of strict liability should govern this case.] Their duty is to use <u>reasonable care to discover and remedy conditions which present an unreasonable risk of harm under the circumstances</u>. Nor does our ruling mean that questions as to whether a dangerous condition existed in an area occupied solely by the tenant or in a common area, or whether the condition was apparent or hidden, are irrelevant. These are circumstances which must be accounted for in customary negligence analysis. They may pertain to the reasonableness of the landlord's or the tenant's conduct and to the foreseeability and magnitude of the risk. In particular, a landlord ordinarily gives up the right to enter premises under the exclusive control of the tenant without the tenant's permission. The landlord's ability to inspect or repair tenant areas is therefore limited. In such cases "a landlord should not be liable in negligence unless he knew or reasonably should have known of the defect and had a reasonable opportunity to repair it." <u>Young v. Garwacki</u>, 380 Mass. 162, 402 N.E.2d 1045, 1050 (1980).

. . . .

In our view genuine issues of material fact exist as to whether the appellees breached their duty to Darline Newton <u>to exercise reasonable care in light of all the circumstances with respect to the condition of the walkway</u>. Determination of whether that duty was breached should be left for the trier of fact.

<u>Newton</u>, 872 P.2d at 1217-18 (emphasis added).

The majority also cites as support for its opinion the case of Morningstar v. Strich (Mich. 1950), 40 N.W.2d 719. This case, decided over forty-six years ago in Michigan, is cited by the majority as the holding of the Supreme Court of Michigan that violation of a "similar" statute established negligence per se. However, that case involved a Michigan statute under the State Housing Law of Michigan that provided, "every dwelling and all the parts thereof including plumbing, heating, ventilating and

17

electrical wiring shall be kept in good repair by the owner."
Morningstar, 40 N.W.2d at 721. A statute not similar by any
comparison to § 70-24-303(1)(c), MCA.

Further, the facts of the Michigan case have no resemblance to
the facts of the case before this Court. The Michigan court
recited the relevant facts as follows:

> The plaintiff was two years and nine months old on
> February 16, 1944, the date of the accident. He was
> playing at the dining room window near the radiator when
> the valve came off. He was so severely scalded that he
> was hospitalized for 76 days.

Morningstar, 40 N.W.2d at 720.

It is clear from the Morningstar opinion that a steam radiator
remained in defective condition for a long period of time with the
knowledge of the landlord and that this defect permitted live steam
to escape causing the plaintiff injury. The Michigan court went on
to state:

> The trial court found that the Hoffman valve
> introduced in evidence had been on the radiator and that
> the accident and injuries to plaintiff resulted from the
> wornout and stripped condition of its threads. He
> further found that some inspection of the heating
> apparatus was made and that the defendant, Henry C.
> Strich, through his agents had notice of the defective
> valve and was negligent in not taking the necessary steps
> to correct the dangerous condition, and that this was the
> proximate cause of the accident.
>
> . . . .
>
> Viewing the testimony in the light most favorable to
> plaintiff, the failure of Henry C. Strich, through his
> agent to take the necessary remedial steps to maintain
> the heating system in good repair was the proximate cause
> of the accident, and the motions were properly denied.
> There is no question that Henry G. Strich had notice of
> trouble with the valves and that he came to the house
> with a plumber. The defective condition of the valve in
> question, if it was on the radiator, should have been

18

apparent upon the examination of it that either was made or should have been made.

Morningstar, 40 N.W.2d at 721.

The facts of the Alaska and Michigan cases are strikingly different from the facts in the case before this Court.

The result of the majority opinion in this case, that negligence per se can be visited upon a property owner renting a residential facility and can subject the property owner to a jury trial because of a claimed pebble or pebbles of gravel on a sidewalk, is stretching the RLTA too far. It gravels me that this Court would do so.

I would hold that the entry of summary judgment for the Andersons was correct.

_____
Chief Justice

Justice Charles E. Erdmann joins in the foregoing dissent of Chief Justice J. A. Turnage.

_____
Justice

19