CHIEF JUSTICE TURNAGE,
dissenting:
A cause of action in negligence consists of four elements: (1) duty; (2) breach of duty; (3) causation; and (4) damages. Hatch v. State Dept. of Highways (1994), 269 Mont. 188, 192, 887 P.2d 729, 732. While the existence of a duty is a question of law, the second element, whether that duty has been breached, is normally a question of fact to be determined by the finder of fact. Limberhand v. Big Ditch Co. (1985), 218 Mont. 132, 144-45, 706 P.2d 491, 498. However, when a defect is so slight that no prudent person could reasonably anticipate danger from it, but an accident happens which could only have been guarded *281 against with extraordinary care and foresight, the question of the defendant’s responsibility is one of law. Wiley v. City of Glendive (1995), 272 Mont. 213, 217-19, 900 P.2d 310, 313.
In the present case, Calder stated by deposition that the sidewalk outside her apartment was usually dirty and that renters, the mailman, and other persons walking from the graveled driveway to the apartment building tracked gravel onto the sidewalk. She acknowledged, however, that she had never considered gravel on the sidewalk to be a danger to her and had not complained to the Andersons about the dirty sidewalk. Nothing in the record supports the idea that the few alleged pieces of gravel on the sidewalk in this case were either a known hazard or a hidden or lurking danger.
This Court has acknowledged the rule that universally known conditions should not be considered hazards. Luebeck v. Safeway Stores, Inc. (1968), 152 Mont. 88, 93, 446 P.2d 921, 924. We have further recognized that the mere happening of an accident, in itself, is not evidence of negligence. Clark v. Norris (1987), 226 Mont. 43, 48, 734 P.2d 182, 185. The law does not require that for every injury there must be a recovery of damages, but only imposes liability for a breach of legal duty proximately causing injury. Clark, 734 P.2d at 185.
Can reasonable minds differ on whether pieces of gravel on a sidewalk adjoining a gravel parking lot establish a breach of legal duty by the property owner? The Court of Appeals of Arizona has said “No.” Forbes v. Romo (Ariz. App. 1979), 601 P.2d 311.
[A] possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them unless the possessor should anticipate the harm despite such knowledge and obviousness. The ... possessor may have reason to expect harm to a visitor from known or obvious dangers, for example when the possessor has reason to expect that the invitee’s attention may be distracted, so he will not discover what is obvious, or forget what he has discovered, or fail to protect himself against it. Since there is no such evidence here, the trial court was correct in awarding summary judgment in favor of the Romos.
... The very most Forbes has shown is that she slipped on a piece of gravel. Neither its size nor the length of time it was on the sidewalk has ever been shown. The record discloses only this lone, solitary piece of gravel on the sidewalk. We do not believe that *282 reasonable minds would differ. Forbes has not shown that [the lessee of the store] was negligent.
Forbes, 601 P.2d at 313-14.
More recently, the Court of Appeals of Ohio affirmed a summary judgment that gravel on a walkway next to a gravel parking lot did not render the walkway unreasonably dangerous or create liability.
Gravel on a walkway next to a gravel parking lot or driveway is, as held by the trial court, a “minor imperfection, commonly encountered and expected.” To hold defendants liable for such “trivial departures from perfection” would be to render them insurers for plaintiffs safety and “the law does not go that far.”
Jones v. H. & T. Enterprises (Ohio App. 9 Dist. 1993), 623 N.E.2d 1329, 1333.
I agree with the reasoning of the Arizona and Ohio courts. I conclude that reasonable minds could not differ as to whether the presence of a few grains of gravel on a sidewalk next to a gravel driveway establishes negligence on the part of the property owner. We do not yet live in an eggshell society in which there is a tort remedy for every injury.
The majority opinion, in seeking to establish for the first time in Montana an actionable tort under § 70-24-303(l)(c), MCA, part of Montana’s Residential Landlord and Tenant Act of 1977 (RLTA), has created a new liability that the majority opinion rests upon negligence per se. In doing so, the majority has stretched the RLTA to a point that approaches the mere happening of an accident as the basis for a tort claim to be decided by a jury.
In the State of Montana, on or in our streets, alleys and parking lots, owned by property owners and occupied by renters, there are to be found inevitably small pieces of gravel. How this could be avoided by a property owner defies reasonableness and common sense. Section 70-24-303(l)(c), MCA, provides:
(1) A landlord shall:
(c) keep all common areas of the premises in a clean and safe condition!.]
The majority has taken this provision of our code and under the facts of this case has misapplied it.
The majority has also ignored provisions of the RLTA that place certain obligations and duties upon the tenant of the rented premises. Section 70-24-32l(l)(b), MCA, provides:
*283 Tenant to maintain dwelling unit. (1) A tenant shall:
(b) keep that part of the premises that the tenant occupies and uses as reasonably clean and safe as the condition of the premises permits[.] [Emphasis added.]
Calder admits in her brief that she and her husband specifically assumed this obligation under their written lease.
Certainly, if the tenant’s obligation is to keep the premises reasonably clean and safe as the condition of the premises permits — which is a reasonable provision — we should, as to reasonableness, not place any higher duty upon the landlord. The landlord’s duty should be to keep the premises reasonably clean and safe as the condition of the premises permits.
The majority opinion finds support and comfort in Newton v. Magill (Alaska 1994), 872 P.2d 1213.I find it informative, however, to point out that the facts involved in Newton are entirely different from the facts involved in the case before this Court. In Newton, the landlord had constructed a wooden walkway from the front door of the house, six feet long and five feet wide, without a handrail, virtually uncovered, and with no “anti-slip” material on its surface. The Alaska premises was located in Petersburg, where persistent rains resulted in a constant drizzle except in the summer when the rain is intermittent and the wet climate fosters the growth of plant organisms on exposed wooden boards causing them to become dangerously slippery when wet.
In Newton the permanent installation of the wooden walkway was accomplished by the landlord, who had notice over a long period of time of the wet boards and the hazard created for slipping. This is an entirely different fact scenario than that before this Court.
The majority has failed to cite a major, important part of the holding in Newton, letting the Alaska court’s relevant comments slip by. The Alaska court stated:
The duty of a tenant is to “keep that part of the premises occupied and used by the tenant as clean and safe as the condition of the premises permit[s].” AS 34.03.120(1). This obligation exists as part of the same statute which defines the landlord’s obligation to “make all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition.” AS 34.03.100(a)(1). It follows that the legislature intended these obligations to be reconcilable. Reconciliation can be accomplished by interpreting *284 the tenant’s duty to pertain to activities such as cleaning, ice and snow removal, and other light maintenance activities pertaining to the safety of the premises which do not involve an alteration of the premises, whereas the landlord’s duty relates to the physical state of the premises. This distinction is suggested by the phrase “as the condition of the premises permit[s]” in section 120(1). In context this must refer to the inherent physical qualities of the premises.
... The legislature by adopting the URLTA has accepted the policy reasons on which the warranty of habitability is based. These are the need for safe and adequate housing, recognition of the inability of many tenants to make repairs, and of their financial disincentives for doing so, since the value of permanent repairs will not be fully realized by a short-term occupant. ...
Our rejection of the general rule of landlord immunity does not make landlords liable as insurers.6 [6We do not accept the Newtons’ argument that a rule of strict liability should govern this case.] Their duty is to use reasonable care to discover and remedy conditions which present an unreasonable risk of harm under the circumstances. Nor does our ruling mean that questions as to whether a dangerous condition existed in an area occupied solely by the tenant or in a common area, or whether the condition was apparent or hidden, are irrelevant. These are circumstances which must be accounted for in customary negligence analysis. They may pertain to the reasonableness of the landlord’s or the tenant’s conduct and to the foreseeability and magnitude of the risk. In particular, a landlord ordinarily gives up the right to enter premises under the exclusive control of the tenant without the tenant’s permission. The landlord’s ability to inspect or repair tenant areas is therefore limited. In such cases “a landlord should not be liable in negligence unless he knew or reasonably should have known of the defect and had a reasonable opportunity to repair it.” Young v. Garwacki, 380 Mass. 162, 402 N.E.2d 1045, 1050 (1980).
In our view genuine issues of material fact exist as to whether the appellees breached their duty to Darline Newton to exercise reasonable care in light of all the circumstances with respect to the *285 condition of the walkway. Determination of whether that duty was breached should be left for the trier of fact.
Newton, 872 P.2d at 1217-18 (emphasis added).
The majority also cites as support for its opinion the case of Morningstar v. Strich (Mich. 1950), 40 N.W.2d 719. This case, decided over forty-six years ago in Michigan, is cited by the majority as the holding of the Supreme Court of Michigan that violation of a “similar” statute established negligence per se. However, that case involved a Michigan statute under the State Housing Law of Michigan that provided, “every dwelling and all the parts thereof including plumbing, heating, ventilating and electrical wiring shall be kept in good repair by the owner.” Morningstar, 40 N.W.2d at 721. A statute not similar by any comparison to § 70-24-303(l)(c), MCA.
Further, the facts of the Michigan case have no resemblance to the facts of the case before this Court. The Michigan court recited the relevant facts as follows:
The plaintiff was two years and nine months old on February 16, 1944, the date of the accident. He was playing at the dining room window near the radiator when the valve came off. He was so severely scalded that he was hospitalized for 76 days.
Morningstar, 40 N.W.2d at 720.
It is clear from the Morningstar opinion that a steam radiator remained in defective condition for a long period of time with the knowledge of the landlord and that this defect permitted live steam to escape causing the plaintiff injury. The Michigan court went on to state:
The trial court found that the Hoffman valve introduced in evidence had been on the radiator and that the accident and injuries to plaintiff resulted from the wornout and stripped condition of its threads. He further found that some inspection of the heating apparatus was made and that the defendant, Henry C. Strich, through his agents had notice of the defective valve and was negligent in not taking the necessary steps to correct the dangerous condition, and that this was the proximate cause of the accident.
Viewing the testimony in the light most favorable to plaintiff, the failure of Henry C. Strich, through his agent to take the necessary remedial steps to maintain the heating system in good repair was the proximate cause of the accident, and the motions *286 were properly denied. There is no question that Henry G. Strich had notice of trouble with the valves and that he came to the house with a plumber. The defective condition of the valve in question, if it was on the radiator, should have been apparent upon the examination of it that either was made or should have been made.
Morningstar, 40 N.W.2d at 721.
The facts of the Alaska and Michigan cases are strikingly different from the facts in the case before this Court.
The result of the majority opinion in this case, that negligence per se can be visited upon a property owner renting a residential facility and can subject the property owner to a jury trial because of a claimed pebble or pebbles of gravel on a sidewalk, is stretching the RLTA too far. It gravels me that this Court would do so.
I would hold that the entry of summary judgment for the Andersons was correct.
JUSTICE ERDMANN joins in the foregoing dissent of CHIEF JUSTICE TURNAGE.